GURNEY P. HOOD, as Commissioner of Banks of the State of North Carolina, Respondent, *v.* GUARANTY TRUST COMPANY OF NEW YORK et al., as Trustees of the Estate of THEODORE ROOSEVELT, Deceased, Appellants.

(Argued November 25, 1935; decided January 28, 1936.)

*George L. Kobbé* for appellant. The plaintiff did not take possession of the assets and business of the bank in the manner alleged in the complaint or in accordance with the provisions of section 218-c of the Consolidated Statutes of North Carolina for the purpose of liquidating it in the way and manner provided by that section. He, therefore, did not acquire any authority or standing to act under that section. (*Angell* v. *Van Schaick*, 132 N. Y. 187; *Corporation Comm.* v. *Murphey*, 197 N. C. 42.)

*Kenneth C. Royall, William D. Whitney* and *Bruce Bromley* for respondent. The plaintiff has made out a good cause of action to recover an assessment under the

North Carolina statutes which he is entitled to enforce in New York. (*Maxwell* v. *Thompson*, 195 App. Div. 616; 232 N. Y. 619; *Marin* v. *Augedahl*, 247 U. S. 142; *Royal Arcanum* v. *Green*, 237 U. S. 531; *Matter of Independence Trust Co.* v. *Keesler*, 206 N. C. 12; *Shipman* v. *Treadwell*, 200 N. Y. 472; 208 N. Y. 404; *Bernheimer* v. *Converse*, 206 U. S. 516; *Converse* v. *Hamilton*, 224 U. S. 243; *Selig* v. *Hamilton*, 234 U. S. 652; *Pope* v. *Heckscher*, 266 N. Y. 114; *Knickerbocker Trust Co.* v. *Iselin*, 109 App. Div. 688; *Whitman* v. *Oxford Nat. Bank*, 176 U. S. 559; *Stratton* v. *Bertles*, 238 App. Div. 87; *Howarth* v. *Angle*, 162 N. Y. 179; *Broderick* v. *American General Corp.*, 71 Fed. Rep. [2d] 864; *Broderick* v. *McGuire*, 174 Atl. Rep. 314; *Broderick* v. *Rosner*, 294 U. S. 629.)

FINCH, J. This is an action brought by the Commissioner of Banks of the State of North Carolina, to collect an assessment on stock of the Page Trust Company, a banking corporation of North Carolina, held by the defendants, as trustees under the will of Theodore Roosevelt.

The complaint alleges that on May 20, 1933, the Page Trust Company voluntarily closed its doors and by formal resolution passed by a majority of its board of directors placed its assets and business under the control of the plaintiff for liquidation. Thereupon, on the 22d of May, the plaintiff duly filed in the Superior Court of North Carolina notice of possession and on the 22d of June levied a one hundred per cent assessment on all stock of the trust company, and duly filed a copy of such levy in the Superior Court. It is further alleged that on the date the plaintiff took possession the defendants were the owners and holders of 100 shares of the capital stock, and that under the provisions of the statutes of North Carolina they became liable for an assessment at the hand of the Commissioner of Banks of that State. It is alleged also that pursuant to statute the filing of the notice of levy of assessment is docketed as a judgment against the various stockholders. The plaintiff sues both upon the judgment and the assessment.

The defendant trustees by answer admit the stock ownership but set up as defenses:

*First.* That they are non-resident and that personal service has not been made upon them and that they have never appeared or submitted themselves to the jurisdiction of the court of North Carolina;

*Secondly.* That the Commissioner of Banks was not authorized to prosecute suits for the collection of assessments outside of the State of North Carolina, and

*Thirdly.* That the Commissioner levied this assessment, not for the purpose of liquidation, but for the purpose of reorganization.

At the trial it appeared without contradiction that the bank had voluntarily closed its doors on May 20, 1933, and that the board of directors by formal resolution had placed it in the hands of the plaintiff for liquidation. Since then the liquidation has proceeded. At the trial there was also testimony as to the law of North Carolina. The plaintiff then rested and so also did the defendants since the latter had presented their case by the introduction of exhibits during the cross-examination of the plaintiff's witness. These exhibits consisted of a copy of the resolution of the board of directors placing the trust company in the hands of the Commissioner and a proposed plan of reorganization together with a notice of the reorganization sent to the stockholders, depositors and creditors accompanied by a statement of the Commissioner announcing his approval of the proposed reorganization. The plan of reorganization provided for liquidation of the trust company by selling its good assets to a new bank and levying a one hundred per cent assessment against the stockholders of the trust company with which to supply new cash for the new bank. In addition each depositor and creditor was to receive a portion of his presently due claim in a time certificate. The record contains a formal abandonment of the proposed reorganization.

Motions for judgment by the plaintiff and to dismiss the complaint by the defendants were made. Both parties stipulated that findings of fact and conclusions of law be waived and a verdict directed as though a jury were present. The court at Trial Term dismissed the complaint upon the ground that the defendants were non-residents and had never been served with process within the State of North Carolina. The Appellate Division reversed and granted judgment for the plaintiff.

The question presented for decision, in brief, is — To what extent did these defendants, by acquiring stock of the Page Trust Company, make themselves liable to the assessments levied against their stock in North Carolina pursuant to statutory authority and sued upon here by the Commissioner of Banks of North Carolina?

It may be taken as settled that when these defendants acquired stock they impliedly agreed that the Page Trust Company in the State of North Carolina should represent them therein in any action to enforce stock liability, except as to their status as stockholders and such other defenses as may be deemed personal to them. In *Marin* v. *Augedahl* (247 U. S. 142, 150), when a receiver of an insolvent corporation in Minnesota sued in North Dakota to enforce an assessment against a stockholder, a non-resident of Minnesota, pursuant to an order of the Minnesota court, it was said: " Whether the stockholder against whom the order is here sought to be enforced was personally a party to the suit in which it was made does not appear; nor is it material. Under the rule in Minnesota, as also the general rule, he was sufficiently represented by the corporation to be bound by the order insofar as it determined the character and insolvency of the corporation and other matters affecting the propriety of a general assessment such as was made."

Likewise in *Bernheimer* v. *Converse* (206 U. S. 516, 529) it was said: " It may be regarded as settled that upon acquiring stock the stockholder incurred an obligation

arising from the [statutory] provision, contractual in its nature and, as such, capable of being enforced in the courts not only of that state, but of another state and of the United States  *   *   *."

We are thus brought to a consideration of the pertinent statute of North Carolina. If there has been compliance with this statute the defendants are bound by the order in so far as it determined the insolvency of the bank and the necessity for an assessment and they are only entitled to set up personal defenses.

The statute provides that " Whenever any bank for any reason shall suspend operations for any length of time, said bank shall, immediately upon such suspension of operations, be deemed in the possession of the commissioner of banks and subject to liquidation hereunder." (North Carolina Code; Cons. Stat., N. C., ch. 5, art. 3, § 218 [c], subd. 2.)

The statutes further require the Commissioner of Banks within forty-eight hours after taking possession of a bank to file a notice of his action with his reasons therefor in the office of the Clerk of the Superior Court. (Subd. 3.) Within thirty days from the filing of the notice of taking possession the Commissioner of Banks must make and state an inventory of the assets and liabilities of the bank and he may levy an assessment on each stockholder and file a notice of this levy with the court, which levy shall be indexed as judgments and shall have the force and effect of a judgment of the Superior Court. (Subds. 9, 13.) It is further provided that " any stockholder may appeal to the Superior Court from the levy of assessment; the issue raised by the appeal may be determined as other actions in the Superior Court." (Subd. 13.) Any surplus remaining in the hands of the Commissioner of Banks after the payment of all liabilities to depositors and other creditors is to be repaid *pro rata* to stockholders who have paid the assessment. (Subd. 13.)

From the facts as stated it is clear that the Commissioner has complied with all the provisions of the statute.

It cannot be held that the Commissioner failed to comply with the statute because the Commissioner gave notice on June 5 that an assessment would be levied on June 22. His action was in accordance with the statute which provides that an assessment may be levied thirty days after the filing of the notice of taking possession. The date of levy was thirty days after notice of taking possession and an earlier giving of notice of intention to levy does not violate the statutory requirement.

The argument is raised, however, that the statutory liability of stockholders cannot be enforced unless there is a necessity for such enforcement and that no such necessity exists unless the bank is found to be insolvent. Turning to the order of levy of assessment we note that it contains a finding by the Commissioner that an assessment " is necessary in order to discharge the liability to general creditors of the said Page Trust Company." Slight effort was necessary to determine the hopeless insolvency of this trust company. Insolvency had been implicit in its every act for a number of months. Even previous to the bank holiday declared by the President's order the officers of the Page Trust Company had requested the Commissioner of Banks to issue an order restricting the withdrawals of deposits. Pursuant to this request such an order had been issued. At the close of the bank holiday the trust company made application for a license to reopen without restrictions, but, after an examination of its assets, the license to reopen without restrictions was denied. From then, until it finally closed its doors on May 20th, the Page Trust Company limped along and continued business only under restrictions. Subsequently the board of directors attempted to reorganize in accordance with a statute (No. Car. Code; Cons. Stat., N. C., ch. 5, art. 2, § 217 [m] 1) which is applicable when a bank's " aggregate property  *  *  *  shall not be sufficient in amount to pay its debts or which  *  *  *  may be unable to pay its debts in the ordinary course of business

as they mature " or which is in the process of liquidation or is without authority to conduct an unrestricted banking business. The proposed plan of reorganization emphasized the insolvent condition of this company. Even if the attempted reorganization had been successful each depositor and creditor would still have had to take a portion of his claim in time certificates. Moreover, in the case of a voluntary liquidation where a bank has closed its doors, generally there would be no need for the Commissioner to make a determination of the necessity for an assessment because it is obvious that insolvency supplied the reason for the closing. That apparently was the picture in the mind of the North Carolina court when it said in one case that ordinarily only personal defenses would be litigated in such a case. (*Corporation Commission* v. *McLean*, 202 N. C. 77.)

It having been found that the assessment was necessary in order to discharge the liability to the general creditors there can be no doubt that the bank was insolvent. It has been held in numerous cases that a bank is insolvent if it is unable to pay its debts in the ordinary course of business. (*Federal Reserve Bank* v. *Idaho Grimm Alfalfa Seed Growers' Assn.*, 8 Fed. Rep. [2d] 922; writ of certiorari denied, 270 U. S. 646; *Cronkleton* v. *Ebmeier*, 38 Fed. Rep. [2d] 748; *Ferry* v. *Bank of Central New York*, 15 How. Pr. 445; *Matter of Empire State Bank*, 10 How. Pr. 498; *Babka Plastering Co.* v. *City State Bank*, 264 Ill. App. 142; *Steele* v. *Commissioner of Banks*, 240 Mass. 394; *Commonwealth ex rel. Bell* v. *Tradesmen's Trust Co.*, 237 Penn. St. 316. Cf. *Sterrett* v. *Third Nat. Bank*, 46 Hun, 22; affd., 122 N. Y. 659.)

It is urged that the action of the Commissioner in determining the need for an assessment is conclusive. The statutes of North Carolina do not so provide. In the recent case of *Matter of Independence Trust Co.* v. *Keesler* (206 N. C. 12) the questions of insolvency and necessity for assessment were raised and these questions and others were fully tried out. Indeed the statutes of

North Carolina have been held constitutional on the very ground that a full opportunity is offered to try out every issue raised whether of law or of fact involved in an assessment in accordance with the procedure provided for the trial of actions brought in the Superior Court. (*Corporation Commission* v. *Murphey,* 197 N. C. 42; affd., 280 U. S. 534.) Similar statutes of other States also have been declared valid. (*Coffin Bros. & Co.* v. *Bennett,* 277 U. S. 29; *Butler* v. *Mobley,* 170 Ga. 265; *Davis* v. *Moore,* 130 Ark. 128.) So long as a State preserves an opportunity to raise and try in court every possible defense, as was done in North Carolina, the guaranty of due process of law is complied with and no constitutional objection remains to any power short of arbitrary which may be intrusted to a Commissioner of Banks by a State. (*Coffin Bros. & Co.* v. *Bennett, supra.*) That is a matter confined solely to the policy of the particular State. Within that orbit the State's interpretation of its own statutes is elsewhere controlling. (*Marin* v. *Augedahl, supra.* Cf. *Supreme Council of Royal Arcanum* v. *Green,* 237 U. S. 531; *Modern Woodmen of America* v. *Mixer,* 267 U. S. 544; *Southworth* v. *Morgan,* 205 N. Y. 293; 2 Beale on Conflict of Laws, p. 866.)

Whether the defenses to a levy of assessment may be raised at one time or another, so long as they may be raised at some time before the stockholder is compelled to pay, is a mere matter of State procedure, and the Fourteenth Amendment to the Constitution of the United States is not concerned with the mere matter of State procedure. (*Coffin Bros. & Co.* v. *Bennett, supra.*) The North Carolina law does not differ in substance from the Minnesota law upheld in *Bernheimer* v. *Converse* (*supra*). The differences are only in procedure. The Minnesota law provided, first, for a determination of insolvency by a court, then, a levy of assessment. The North Carolina law provides, first, for a determination for assessment or insolvency by an administrative official,

followed by a levy of assessment, and then an opportunity to come into court and contest the determination or necessity for assessment. The sequence of steps differs but the statutes are alike in their essentials. Under either statute the corporation or its stockholders could contest the findings or allegations of insolvency or necessity for assessment in the State where the corporation is domiciled. Where such finding or allegation is contested by a corporation and then the finding is upheld it is clear that the determination is an adjudication of insolvency and necessity for assessment and " These questions cannot be reopened in another court when the receiver sues to collect the amount of the assessment." (*Selig* v. *Hamilton*, 234 U. S. 652, 662.) There is no reason for not reaching the same result, where the corporation, although it has the opportunity to contest the allegation or finding, fails to do so because it is obvious that the corporation is so hopelessly insolvent that such contest would be futile. The corporation represents its stockholders whether it challenges the findings of an administrative official or bows to the obvious. This conclusion is implicit in the cases upholding the Federal statute which makes the determination of the Comptroller conclusive. (*Kennedy* v. *Gibson*, 8 Wall. [U. S.] 498; *Casey* v. *Galli*, 94 U. S. 673; *Bushnell* v. *Leland*, 164 U. S. 684.)

Nothing in this opinion is to be construed as holding that without personal service within the State personal judgment could be entered against a non-resident stockholder. The rule of *Pennoyer* v. *Neff* (95 U. S. 714), recently reiterated by this court in *Pope* v. *Heckscher* (266 N. Y. 114), in no way conflicts with the conclusion herein reached. We merely hold that the stockholders, having implicitly agreed that the corporation represent them, are bound by a finding of the necessity for an assessment and the amount of the assessment. In the words of Justice, now Chief Justice, HUGHES, in *Selig* v. *Hamilton* (*supra*, p. 662): " It follows that if the court,

thus having jurisdiction and acting upon the evidence before it in the statutory proceeding, assessed former stockholders for the purpose of providing for debts incurred while they held their stock, its determination with respect to the amount of the assessment and the necessity therefor must be deemed conclusive. These questions cannot be reopened in another court when the receiver sues to collect the amount of the assessment. The stockholder in such a suit is free to urge his personal defenses but this does not mean that he may resist the receiver's demand upon the ground that the assessment was not needed. The marshalling of the amounts recovered from stockholders is also the appropriate subject for the consideration of the court which under the statute collects and distributes the fund. It is quite obvious that another court, in an action by the receiver against the stockholder, could not undertake to fix the amount required to pay the debts for which the stockholder is liable unless it virtually assumed the duty imposed by the statute of determining what a ratable assessment should be and thus denied due credit to the determination already made in a court of competent jurisdiction."

The assessment in North Carolina is not and cannot be treated as a conclusive judgment against the defendants. In an action brought on such assessment in New York it is only conclusive as to the necessity for and the amount of the assessment. Personal defenses may still be set up and if found valid will prevent the Commissioner of Banks from obtaining judgment.

At the trial the defendants could have raised defenses personal to themselves. They not only did not raise such defenses but instead conceded their status as stockholders and attempted only to defend by seeking to compel the relitigation of the question of the necessity for and the amount of the assessment. This they could not do.

This court has already affirmed a judgment enforcing an assessment made by a Bank Superintendent of another

State under a statute strikingly similar. (*Maxwell* v. *Thompson*, 232 N. Y. 619, affg. 195 App. Div. 616.) The same result has been reached elsewhere. (*Gile* v. *Duke*, 5 Fed. Rep. [2d] 952; *Hanson* v. *Soderberg*, 105 Wash. 255.)

Even if the determination of the necessity for an assessment and the amount thereof were open to challenge in the courts of this State, the plaintiff would still be entitled to judgment in the case at bar. The validity of the assessment depends upon the Commissioner having complied with the requirements specified in the statutes of North Carolina. The complaint alleges that the levy was made in compliance with law by an order stating that the assessment was necessary. The presumption lies that the Commissioner of Banks, being a public official, acted in compliance with law. (*Hamilton* v. *Erie R. R. Co.*, 219 N. Y. 343.) (See *Matter of Marcellus*, 165 N. Y. 70, 77; *United States* v. *Chemical Foundation, Inc.*, 272 U. S. 1, 14, 15.) The record thus shows a *prima facie* case of such compliance. At the trial no evidence was offered by the defendants in contradiction of this *prima facie* case. No attempt was made to show that the assessment was unnecessary or to point out any particular in which the necessary procedure was not followed by the Commissioner of Banks, and, therefore, judgment must go against them.

The conclusions above reached preclude the practical harm which would result from requiring the Commissioner of Banks to try the question of the necessity and amount of the assessment in each action brought, with perhaps varying results in each State, so that non-residents in one State might be absolved by a finding of fact in their favor, while in another State others not so fortunate would be held. Such practical harm has been recognized by the courts. In *Broderick* v. *American General Corp.* (71 Fed. Rep. [2d] 864, at p. 870), a case very similar to the case at bar, the court said:

" Surely it was not contemplated by the legislature that in each suit the Court should wade through all the facts and figures involved in the bank's assets and liabilities to make the determination which the legislature had already authorized the Superintendent himself to make, with possibility of conflict between the decisions of different courts in different cases affecting stockholders of the same bank."

" It would be attended with injurious consequences to forbid action against the stockholders until the precise amount necessary to be collected shall be formally ascertained. This would greatly protract the final settlement, and might be attended with large losses by insolvency and otherwise in the intervening time. The amount must depend in part upon the solvency of the debtors and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases cannot be foreseen. The same remarks apply to the enforced collections from the stockholders. A speedy adjustment is necessary to the efficiency and utility of the law; the interests of the creditors require it, and it was the obvious policy and purpose of Congress to give it. If too much be collected, it is provided by the statute, that any surplus which may remain after satisfying all demands against the association, shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered." (*Kennedy* v. *Gibson*, 8 Wall. [U. S.] 498, at p. 505.)

It follows that the judgment appealed from should be affirmed, with costs.

CRANE, Ch. J. (concurring in result). I do not consider the judgment entered in North Carolina to be of any greater force and effect than the assessment levied by the Commissioner of Banks. For the purposes of this action, however, it makes no difference whether the action

be upon the judgment or upon the assessment. Both were alleged and proved, and the action is to recover the amount of the assessment. The validity of the assessment depends upon the Commissioner having complied with the preliminary requisites as specified in the Laws of North Carolina, chapter 4 of the Laws of 1921 as amended. The record shows a *prima facie* case of such compliance.

The defendants had an opportunity upon the trial to meet this issue, that is, to show that the assessment was void both as to residents and non-residents, in that the Commissioner had acted without authority. This the defendants failed to do, having offered no testimony whatever. They have had their day in court. Opportunity has been given them to attack this assessment, but they have relied solely upon the failure of the plaintiff to prove insolvency of the bank, the necessity for the assessment and the *pro rata* share which the defendants as stockholders should pay to meet the liabilities.

I think the possession taken under the resolution of the directors and upon the closing of the bank, the action of the Commissioner thereon in levying the assessment by an order stating " that an assessment against the stockholders of the Page Trust Company, Aberdeen, North Carolina, is necessary in order to discharge the liability to general creditors," and the filing of a copy of such levy in the office of the Clerk of the Superior Court is sufficient to show in the first instance a compliance with the law. When the defendants failed to point out any particular in which the necessary procedure was not followed by the Commissioner of Banks, judgment should go against them in the courts of this State.

LEHMAN, J. (dissenting). The defendants, residents of the State of New York, have been since January 31, 1931, the owners and holders of 100 shares of the capital stock of the Page Trust Company, a banking corporation organized and doing business under the laws of the State of North Carolina. The rights and obligations of the

stockholders of a corporation arise from and are defined by the charter, constitution and by-laws of the corporation; and the laws of the State which creates the corporation are " integrally and necessarily the criterion to be resorted to for the purpose of ascertaining the significance of the constitution and by-laws." (*Supreme Council of Royal Arcanum* v. *Green,* 237 U. S. 531, 542.) The statutes of North Carolina provide that: " The stockholders of every bank organized under the laws of North Carolina, whether under the general law or by special act, shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation, to the extent of the amount of their stocks therein at par value thereof, in addition to the amount invested in such shares, except as otherwise provided. * * *." (No. Car. Code; Consolidated Laws, N. C., ch. 5, art. 4, § 219-a.) This action is brought to enforce that liability.

" It may be regarded as settled that upon acquiring stock the stockholder incurred an obligation arising from the [statutory] provision, contractual in its nature and, as such, capable of being enforced in the courts not only of that State, but of another State and of the United States (*Whitman, etc.,* v. *Bank,* 176 U. S. 559), although the obligation is not entirely contractual and springs primarily from the law creating the obligation. (*Christopher* v. *Norvell,* 201 U. S. 216.) " (*Bernheimer* v. *Converse,* 206 U. S. 516, 529.) The defendants do not dispute the existence of the obligation or that it may be enforced in the courts of this State. They appeal to this court from the judgment rendered against them on the ground that liability upon that obligation has not been properly established.

The statutes of North Carolina not only create the obligation but provide a remedy for the enforcement of the obligation. That remedy constitutes a part of the statutory method for the liquidation of banks. (No. Car.

Code; Cons. Laws, § 218-c.) That section confers upon the Commissioner of Banks of the State power to take possession of any bank which he shall find " in an insolvent, unsafe or unsound condition * * * to continue its business," or which neglects or fails to obey certain requirements of the Commissioner of Banks, or which has voluntarily placed its assets and business under the control of the Commissioner of Banks; or which " shall suspend operations for any length of time." (Subds. 1 and 2.) It requires the Commissioner of Banks, within forty-eight hours after taking possession of a bank, to file " with the clerk of the Superior Court in the county where said bank is located, a notice of his action which shall state the reason therefor." (Subd. 3.) " Within thirty days after the filing of the notice of the taking possession of any bank in the office of the clerk of the Superior Court, the commissioner of banks, or the duly appointed agent, shall make and state an inventory of the assets and liabilities of the said bank, and shall file one copy thereof with the Clerk of the Superior Court in the pending action and shall keep one copy on file in the said bank." (Subd. 9.) "After the expiration of thirty days from the date of the filing of the notice of the taking possession of any bank, in the office of the Clerk of the Superior Court, the commissioner of banks may levy an assessment equal to the stock liability of each stockholder in the bank, and shall file a copy of such levy in the office of the clerk of the Superior Court, which shall be recorded and indexed as judgments, and shall have the force and effect of a judgment of the Superior Courts of this State; and the same shall become due and payable immediately, * * * and actions on said assessment may be instituted against any non-resident stockholders in the same manner as other actions against non-residents of the State. Any stockholder may appeal to the Superior Court from the levy of the assessment; the issue raised by the appeal may be determined as other actions in the Superior Court * * *. All sums collected under the levy shall become

immediately available as general assets of the bank for distribution as other assets; Provided, however, that whenever the expenses of liquidation have been paid and all of the liabilities to depositors and other creditors shall have been discharged, the money then remaining in the hands of the commissioner of banks shall be applied *pro rata* to the repayment of the amounts paid in by the stockholders" (Subd. 13).

The Commissioner of Banks has, at least in form, complied with all these provisions of the statute. On May 20, 1933, he took possession of the bank after the bank was closed for business by the directors who, by formal resolution, placed its assets under his control for liquidation. He filed the required notice of possession on May 22. The bank might then have opposed his action, if for any reason it was invalid. When it failed to do so, the action of the Commissioner became conclusive upon the bank and all its stockholders. " In such case it has been frequently held that the representation which a stockholder has by virtue of his membership in the corporation is all that he is entitled to." (*Bernheimer* v. *Converse, supra*, p. 532.) It must be remembered, however, that though no stockholder can thereafter, in another proceeding, collaterally attack the right of the Commissioner of Banks to liquidate the bank for the reasons stated in the notice, yet these reasons do not include insolvency of the bank, and liquidation of the bank would be in accordance with the statutory powers of the Commissioner even if the bank was not insolvent.

In order to enforce the statutory obligation of the stockholders in such liquidation, there must be necessity for such enforcement, and such necessity must be determined by the Commissioner of Banks before liability arises. The liability imposed by the obligation is a separate liability and each stockholder is responsible only for his proportion of the debts of the bank. The Federal statutes for a long time imposed an obligation upon the

stockholders of national banks in identical language. In construing that statute it has been said that the words of the statute do not " mean that the stockholder promises the creditor as surety for the debts of the corporation, but merely impose a liability on him as secondary to those debts, which debts remain distinct, and to which the stockholder is not a party. The liability is a consequence of the breach by the corporation of its contract to pay, and is collateral and statutory." It is conditional and enforceable only according to the statute " independent of which the cause of action does not exist." (*McClaine* v. *Rankin*, 197 U. S. 154, 161, 162.) " In the process to be pursued to fix the amount of the separate liability of each of the shareholders, it is necessary to ascertain, (1), the whole amount of the par value of all the stock held by *all the shareholders;* (2), the amount of the deficit to be paid after exhausting all the assets of the bank; (3), then to apply the rule that each shareholder shall contribute such sum as will bear the same proportion to the whole amount of the deficit as his stock bears to the whole amount of the capital stock of the bank at its par value." (*United States* v. *Knox*, 102 U. S. 422, 425.) At the trial of this action no evidence was given to establish the amount of the deficit, if any, to be paid after exhausting the assets of the bank. The plaintiff showed only that the Commissioner of Banks on June 5, 1933, mailed to stockholders a notice " that on the 22nd day of June, 1933, the Commissioner of Banks under and by virtue of the provisions of Paragraph 13, Chapter 113, Public Laws of 1927, as amended by Chapter 243, Public Laws of 1931, *will levy an assessment against the stockholders of the above named bank, and will, on the said 22d day of June, 1933, docket said assessment* in the office of the Clerk of Superior Court of Moore County," and that on June 22d he did docket an order of assessment stating: " it appearing to the Commissioner of Banks that an assessment against the stockholders of the Page Trust Company * * * is necessary, * * * the Commissioner of

Banks of the State of North Carolina hereby levies an assessment," etc. The plaintiff maintains, and the Appellate Division has held, that under the statute the determination of the Commissioner of Banks that an assessment is necessary is conclusive and may not be attacked in an action brought in this State against a non-resident to enforce the assessment.

The statute of North Carolina does not in terms provide that the determination of the Commissioner of Banks shall be conclusive. It is said, however, that such provision is there by fair implication. The power of the State to intrust to the Commissioner of Banks the function of determining whether in the course of his administration of an insolvent bank he should enforce the statutory liability of stockholders is not open to challenge. (*Kennedy* v. *Gibson*, 8 Wall. [U. S.] 498; *Casey* v. *Galli*, 94 U. S. 673.) His determination of the necessity and the amount of the assessment to be made may, if the statute so provides, be conclusive in a statutory action thereafter brought to enforce such liability. Even then, it must appear that the statute authorized such determination, and that the Commissioner of Banks did not exceed the jurisdiction confided in him. Here there is grave question whether the statute was intended to provide that the assessment made by the Commissioner of Banks should be in any respect conclusive, even in statutory proceedings in North Carolina. The statute provides, it is true, that an assessment made by the Commissioner shall have the force and effect of a judgment of the Superior Court, yet it is clear that the determination of an administrative officer, like the judgment of a court, cannot be given conclusive effect outside of the administrative field, unless there has been notice and opportunity to be heard before the determination is made. Certainly the determination of an administrative officer cannot be given conclusive effect where enforcement of the judgment of a court would violate constitutional safeguards.

Probably to meet such objection, the statute further provides that "any stockholder may appeal to the Superior Court from the levy of the assessment; the issue raised by the appeal may be determined as other actions in the Superior Court" (Subd. 13). What issue may be raised in such an action? Certainly the question of whether the Commissioner has under the statute any power to levy an assessment; for that question concerns the jurisdiction of the Commissioner and the jurisdiction of an administrative officer may always be challenged. If that challenge be successfully met, then the question of the effect of the determination by the Commissioner is primarily a question of statutory construction and secondarily of constitutional power.

The Supreme Court of the State of North Carolina, construing the statute in *Corporation Commission* v. *Murphey* (197 N. C. 42), said: " When a banking corporation is *adjudged* insolvent, because its assets, available for the payment of its liabilities, are not sufficient for the payment of the same, each stockholder has notice that he is liable to an assessment on account of his individual, statutory liability. He is interested *then only* in the amount or amounts for which he may be assessed on account of such liability. Under the procedure prescribed by the statute, he has notice that the corporation has been adjudged insolvent; he also has notice of the amount of the assessment made against him. He may appeal from the assessment to the Superior Court of the county in which the proceeding for the liquidation of the corporation is pending; on his appeal, *all issues raised by him, whether of law or of fact, involving his liability on the assessment, will be determined, in* accordance with the procedure for the trial of actions brought and prosecuted in the Superior Court " (p. 45). (Italics are mine.) For that reason the State court upheld the constitutionality of the statute and its decision was affirmed by the Supreme Court of the United States (280 U. S. 534) in a memorandum decision: " Judgment affirmed. *Coffin Brothers & Co.* v. *Bennett*, 277 U. S. 29; *Missouri Pacific R. Co.* v.

*Nebraska,* 164 U. S. 403, 414; *Knights of Pythias* v. *Meyer,* 265 U. S. 30, 32–33.''

The respondent Commissioner of Banks relies upon that decision as authority for his contentions here. An analysis of that decision shows that it barely touches the questions raised by the appellant here. In the earlier case, as the Supreme Court of North Carolina pointed out, the bank had been adjudicated insolvent. That adjudication was binding upon all the stockholders of the bank because there the stockholders were represented by the bank and it established conclusively that each stockholder was '' liable to an assessment on account of his individual * * * liability '' and the stockholder was '' interested then only in the amount or amounts for which he may be assessed on account of such liability.'' The procedure prescribed by the statute, as construed by the court, provided for notice and opportunity to be heard upon every issue of law or fact as to the validity of the assessment, and certainly that must include the *only* issue in which the stockholder was *then* interested. Thus construed, the statute provided '' ' a mode only of commencing against [the stockholders] suits to enforce their statutory liability to depositors.' '' (*Coffin Bros. & Co.* v. *Bennett,* 277 U. S. 29, 31.)

In the case now under consideration, there has been no adjudication that the bank is insolvent. On the contrary, the power of the Commissioner to liquidate the bank is derived from the voluntary act of the directors of the bank in closing its doors and placing its assets under his control, and it appears that the directors of the bank took such action for the purpose of making effective a proposed plan of reorganization which included an assessment of one hundred per cent upon the stockholders' liability. It is true that this plan of reorganization has been long since abandoned and the Commissioner of Banks does not now contend that an assessment for the purpose of carrying out the plan of reorganization would be valid.

His contention now is that in spite of the fact that there has been no prior adjudication of insolvency, where there is actual insolvency he may levy an assessment upon stockholders for the purpose of enforcing their statutory liability. He unquestionably has that power under the North Carolina statute as construed in *Matter of Independence Trust Co.* v. *Keesler* (206 N. C. 12), but only if in truth the bank *is* actually insolvent, and a stockholder, before his property can be used for the satisfaction of his statutory liability, must have opportunity to contest the validity of the assessment and its amount.

If the procedure authorized by the statute is only " ' a mode * * * of commencing against [stockholders] suits to enforce their statutory liability to depositors ' " (*Coffin Bros. & Co.* v. *Bennett, supra*), then it would seem that the State could not compel non-residents of that State to go to the State in response to notice not served upon them within the State. Here it must be remembered that in *Corporation Commission* v. *Murphey* (*supra*) the defendant was a resident of the State. No court has yet held that in an action brought in another State against stockholders resident there, the assessment of the Commissioner of Banks in North Carolina is conclusive, unless previously challenged by resort to the courts of that State.

In *Bernheimer* v. *Converse* (206 U. S. 516); *Converse* v. *Hamilton* (224 U. S. 243); *Selig* v. *Hamilton* (234 U. S. 652); *Marin* v. *Augedahl* (247 U. S. 142), cited by Judge FINCH as authority for that proposition, the court held only that a judgment in a proceeding against the corporation would be conclusive as an adjudication *in rem* establishing the status of the corporation, in subsequent proceedings *in personam* against a stockholder of the corporation. There, as pointed out above, the stockholder was represented by the corporation. These cases might be applicable if these defendants challenged the right of the Commissioner of Banks to liquidate the bank; for there the corporation would represent the shareholders.

Here the defendants challenge the determination of the Commissioner made in the course of liquidation to enforce the shareholders' statutory liability, and according to the construction which the Supreme Court of the State of North Carolina has placed upon the statute, there is no such liability unless the corporation is insolvent. Insolvency has not been adjudicated in any proceeding *in rem* against the corporation or in any other proceeding in which the defendants appeared or were represented. Indeed no issue as to the validity of the assessment which the appellant seeks to raise in this action has ever been adjudicated in any court.

It is said, however, that under the provisions of the statute, those issues may be adjudicated only in the statutory proceedings in the Superior Courts of North Carolina. The State could so provide in the case of resident stockholders. It is at least doubtful whether the statute intends that non-residents must resort to the courts of the State of North Carolina in order to challenge the validity of an assessment; for the statute provides as to them that after an assessment has been levied " actions on said assessment may be instituted against any non-resident stockholder in the same manner as other actions against non-residents of the state " (Subd. 13). That provision seems to indicate that the Legislature intended to make a distinction between resident stockholders and non-resident stockholders in regard to the procedure for the enforcement of an assessment. Against resident stockholders the assessment should have " the force and effect of a judgment " subject, however, by attack through " appeal " (Subd. 13). Against non-resident stockholders judgment should be entered only in an action brought, like " other actions against non-residents of the state," *i. e.*, an action in which the court would obtain jurisdiction of the person of the non-resident stockholder. It seems to me difficult to give this provision any other construction, but question of construction is unimportant, for the Legislature would have no power to provide otherwise.

The State could not provide that without personal service within the State a personal judgment could be entered against a non-resident stockholder. (*Pennoyer* v. *Neff*, 95 U. S. 714.) True stockholders of a bank or other corporation may be bound by an adjudication against the corporation where by express or implied agreement of the stockholders the corporation has power to represent the stockholders. Outside that field the State may not deprive a stockholder of his right to litigate, in accordance with the requirements of due process, all matters affecting his rights. (*Pope* v. *Heckscher*, 266 N. Y. 114, 118.) In the cases there cited, the issue left undecided by prior adjudication where the stockholder was represented by the corporation, was only " the fact of his status as stockholder and defenses personal to him." Here no prior adjudication has been made of any issue affecting the validity of the assessment except the right of the Commissioner of Banks to liquidate the bank for reasons other than insolvency. Under the statute as construed in *Corporation Commission* v. *Murphey* (*supra*), all such issues could be raised in judicial proceedings in the State of North Carolina. The State cannot, by notice, compel a non-resident stockholder to resort to the courts of the State to present his defense; yet to sustain the action brought in New York against a stockholder resident here, it is said that the assessment becomes conclusive, because the New York stockholder has not, in obedience to notice, challenged the assessment by judicial proceedings in North Carolina. Thus the courts of this State are asked to give judgment upon a statutory liability without proof that the liability exists, except the fiat of an administrative officer, and without right by the defendant to challenge that fiat. Such procedure might be a convenient method of enforcing liability, but disregard of the requirements of due process cannot be justified on the ground of administrative convenience.

Finally it is argued that the judgment against these defendants may be sustained on the ground that even though the assessment is not a judgment entitled to full

faith and credit, yet that the administrative act of the Commissioner establishes, either presumptively or conclusively, that the assessment is necessary. Analogy is found in decisions of the Supreme Court of the United States which construed the Federal statutes in regard to the statutory liability of national banks, as intended to make the determination of the Commissioner conclusive. In those cases the insolvency of the bank was not challenged; nor was there any other challenge relating to the jurisdiction of the administrative officer. (*Kennedy* v. *Gibson*, 8 Wall. [U. S.] 498; *Casey* v. *Galli*, 94 U. S. 673; *Bushnell* v. *Leland*, 164 U. S. 684.) Moreover it was pointed out in *United States* v. *Knox* (102 U. S. 422, 425) that although assessments made by the Comptroller are conclusive in a statutory action, yet if the Comptroller's determination were unjust " it cannot be doubted that a court of equity, if its aid were invoked, would promptly restrain him by injunction." Those cases have no application here, where the statute does not provide that in North Carolina the determination of the Commissioner shall be conclusive, and more important perhaps, where the jurisdiction of the administrative officer is challenged and the determination of the administrative officer is sought to be enforced, not in a statutory action, but in an action in another State to enforce the *quasi* contractual statutory liability of the stockholders. There, it seems clear, that the court may require proof which will enable it to fix the amount of such liability in the manner set forth in *United States* v. *Knox* (*supra*).

Nor can the judgment be sustained on the ground that there is a presumption that the Commissioner acted properly and within the scope of his powers and that, therefore, his determination that the levy was necessary establishes a *prima facie* case. The trial court did not so find and its judgment has been reversed on the law. Even assuming, though that assumption may be doubtful, that in some cases such a presumption might supply the place of evidence, no such presumption could possibly apply here. The Commissioner took control of the bank

for reasons other than insolvency. He was required by statute to make an inventory of the assets and liabilities of the bank within thirty days after he took possession. Only after the expiration of the thirty days could he levy an assessment. It is clear that until that time the Commissioner of Banks could not determine whether the bank was insolvent, or the amount of the assessment which should be levied, yet it appears that on June 5th, seventeen days before the expiration of the time to make and state the inventory, he sent the stockholders " notice that on the 22nd day of June, 1933, the Commissioner of Banks * * * will levy an assessment against the stockholders of the above named bank." Now, though the directors closed the bank for the purpose of reorganizing it, though the Commissioner gave this notice long before the date at which the necessity for a levy was to be determined, and though the Commissioner never expressly found that the bank was insolvent, it is said that as *matter of law* the courts of this State, at least in the absence of evidence to the contrary, must find that the Commissioner properly determined that the bank was insolvent, as a prerequisite to the assessment. Moreover, even then each stockholder would be interested in the amount of the assessment, and the Commissioner was required to determine that (*Corporation Commission* v. *Murphey, supra*); yet here it is undisputed that he never made such determination, but always levied a one hundred per cent assessment. (Cf. *United States* v. *Knox, supra.*) Under these circumstances the courts of this State may not grant judgment enforcing the stockholders' statutory liability without proof that the occasion for enforcing such liability in the amount demanded had arisen.

The judgment of the Appellate Division should be reversed and judgment of Trial Term affirmed.

O'BRIEN and LOUGHRAN, JJ., concur with FINCH, J.; CRANE, Ch. J., concurs in result in separate opinion; LEHMAN, J., dissents in opinion in which HUBBS, J., concurs; CROUCH, J., not sitting.

Judgment affirmed.