Matter of TELA-NEWS FLASH, INC., Petitioner, against DISTRICT ATTORNEY OF COUNTY OF QUEENS et al., Respondents.

Supreme Court, Special Term, Queens County, March 31, 1950.

*Matthew H. Brandenburg* for petitioner.

*Ralph W. Brown* and *Irving W. Young* for New York Telephone Company, respondent.

*John P. McGrath, Corporation Counsel* (*Saul Moskoff* and *Leonard E. Katlin* of counsel), for William P. O'Brien, as commissioner of police of the city of New York, respondent.

*Charles P. Sullivan, District Attorney* (*J. Irwin Shapiro* of counsel), respondent.

Hooley, J. Motion to compel the respondent New York Telephone Company to continue its services to petitioner and that the other respondents, to wit, the District Attorney of Queens County and the police department of the City of New York be restrained from interfering in any manner with the petitioner in the operation of its business.

Insofar as the motion seeks to restrain the District Attorney of Queens County and the police department of the City of New York from interfering with the petitioner in the operation of its business, the motion is denied. It is well settled that if the police or District Attorney have reasonable grounds for believing that violations of law are being or may be committed, equity will not interfere with action by them designed to prevent the commission of crime. It has been repeatedly held that the court should not interfere with the reasonable exercise of discretionary power of public officials (*Doolittle* v. *Supervisors of Broome County*, 18 N. Y. 155, 163; *Message Photo-Play Co.* v. *Bell*, 179 App. Div. 13, 20). There is every presumption in favor of the reasonableness of the acts of public officials in actions taken for the general welfare, and it is presumed that a public official does not act contrary to his official duty (*Matter of City of New York* [*Ely Avenue*] 217 N. Y. 45; *Hood* v.

*Guaranty Trust Co.,* 270 N. Y. 17, 28; *Matter of Whitman,* 225 N. Y. 1, 9; *Hamilton* v. *The Erie R. R. Co.,* 219 N. Y. 343, 350).

Neither will the court interfere with the discontinuance of telephone service if it appears that such service has been used in connection with the commission of crime.

It appears in this case that the business and directing manager of petitioner, Tela-News Flash Inc., is one described in its racing publication, the *Daily Oracle,* as Anthony Arnold. Upon the argument it was conceded by petitioner that Anthony Arnold is, in truth and in fact, one William Annette who has applied on two former occasions for relief almost exactly similar to that sought here (see *Matter of Annette* v. *New York Tel. Co.,* 74 N. Y. S. 2d 330, affd. 273 App. Div. 997). In that case, decided in 1945, Mr. Justice MILLER said concerning said Annette (p. 330): " His method of obtaining the information and his method of conducting his business were unusual; they were not as men ordinarily do, and leave no doubt that he was engaged mainly, if not solely, for the purpose of aiding bookmakers in their activities."

Annette, thereafter, in 1947 made an application in Queens County for an order directing the New York Telephone Company to furnish telephone service. The court there found that petitioner was engaged in substantially the same business as that in which he was engaged at the time of the decision of Mr. Justice MILLER (see *Matter of Annette* v. *New York Tel. Co.,* 74 N. Y. S. 2d 331).

On the papers presented upon this application the court is again confronted with substantially the same line of business as came before the court in the aforementioned applications cited above. What Annette did after the two prior reported decisions was to change his name, the location of his business and the name of the racing sheet, and introduce a new corporate name as the publisher thereof, and the New York Telephone Company was led into furnishing service which it had twice before refused to continue and which refusal the courts had held proper.

The District Attorney of Queens County obtained from the County Court of Queens County an order pursuant to section 813-a of the Code of Criminal Procedure permitting the interception of communications passing through petitioner's phones. As a result of such interception of communications a conference was held between officials of the District Attorney's office, the police department and the New York Telephone Company, at which the representatives of the telephone company were

informed that the District Attorney and the police commissioner were of the opinion that the telephone services in question should be discontinued because the same were being used as an aid to gambling activities.

The records of the interceptions submitted to the court confirm the belief of the court that the telephones in question have been used for gambling purposes. That such evidence may be properly used herein is clear under the decision in *Matter of Harlem Check Cashing Corp.* v. *Bell* (296 N. Y. 15).

Furthermore, aside from the evidence of intercepted messages there can be no doubt that the service is one used to aid gambling activities. Section 986 of the Penal Law expressly declares that it is a misdemeanor to aid or abet another in book-making. The fact that the petitioner charged $60 per week for its services in furnishing horse racing information to its subscribers is clearly indicative that the service was to aid and abet book-making. On the argument herein, petitioner's counsel conceded that its service was quite unique in that they were able to furnish the results of horse races immediately after the race had been run. He sought to argue that this information was of value to bettors in that they would be in a position to again risk their winnings on the first couple of races on the subsequent races to be run that day. The plain fact is that unless one were to bet at a pari-mutuel track where betting is legal, there is no way for a bettor who desires to wager on horse racing other than to do business through book-makers. It is clear that no individual would pay $60 per week for this service while attending the race track. The service, however, would be of real value to a book-maker and to his patrons because if the patrons should win in the early races they might easily be encouraged to make bets on subsequent races on the same day.

The petitioner has wholly failed to show a clear legal right to the relief which he seeks. On the contrary, the record clearly shows that upon the merits of the application, the action of the telephone company was thoroughly justified and its action in curtailing service should not be disturbed.

If the respondents, the District Attorney of Queens County and the police department of the City of New York desire that the complaint as against them be dismissed, they should make formal application therefor.

The petition is, in all respects, dismissed.