In the Matter of RALPH MARTINELLI, JR., et al., as Copartners Doing Business under the Name of YONKERS DAILY TIMES, Petitioners, against NEW YORK TELEPHONE COMPANY, Respondent.

Supreme Court, Special Term, Westchester County, March 8, 1954.

*Butler, Bennett & Fitzpatrick* for petitioners.

*Ralph W. Brown* for respondent.

DOSCHER, J. Petitioners, partners publishing the " Yonkers Daily Times ", bring this application, pursuant to article 78 of the Civil Practice Act, to compel the respondent, New York Telephone Company, to furnish service at their place of business. In defense of its actions, respondent claims a right and obligation to refuse service to those who it has reasonable cause to believe will use the same in violation of law. It further alleges that it has such reasonable cause to believe that petitioners will use the facilities, if installed, illegally and improperly.

According to the rules and regulations filed by respondent with the Public Service Commission, it has the right to terminate its service to any subscriber " in the event of prohibited or improper use of the facilities or service ". In accordance with those rules, on June 8, 1950, telephone service was terminated at the plant of the " Yonkers Daily Times ", then operated by the petitioners and another, not a party to this proceeding. Thereafter a proceeding, pursuant to article 78 of the Civil Practice Act, was commenced in this court to compel restoration of the telephone service. That application was denied and such denial, on appeal, was affirmed (*Matter of Martinelli* v. *New York Tel. Co.,* 279 App. Div. 588). The basis for the termination of service in 1950, was the dissemination of information on racing results, sporting events and other subjects to book-makers, gamblers and others who used such information to violate the State's laws against gambling. The order, made in 1950, denying restoration of service, while not *res judicata* in this proceeding, must be considered in the determination of the reasonableness of respondent's present refusal and the " clear legal right " of petitioners to service.

Both parties agree that in order for petitioners to succeed, they must show a " clear legal right " to the relief requested. In the opinion of this court, whether such right exists is inex-

tricably wound up with the question of whether the company's refusal to furnish service was, and is, reasonable.

It is no longer open to question that telephone service may be discontinued or terminated not only for actual book-making, but also where such service is used in furtherance of such illegal activities (*Matter of Movietime* v. *New York Tel. Co.*, 277 App. Div. 1057; *Matter of Tela-News Flash* v. *District Attorney of Co. of Queens*, 197 Misc. 1015, affd. 277 App. Div. 1119, motion for leave to appeal denied 302 N. Y. 951). If service can be terminated for such activity, must the utility wait until the occurrence and then remove the service or can it refuse to install it in the first instance where it has reasonable grounds to believe that such activity would occur?

While the furnishing of telephone service has become almost a necessity in the conduct of business, the refusal of such service is not penal in nature. The utility must not wait until the happening of an illegal act to refuse further service. If it acts in good faith, upon reasonably probable cause, it may refuse service and sufficiently answer an application in the nature of a mandamus (*Matter of Cullen* v. *New York Tel. Co.*, 106 App. Div. 250; *People ex rel. Restmeyer* v. *New York Tel. Co.*, 173 App. Div. 132; *People ex rel. Hiegel* v. *New York Tel. Co.*, 119 Misc. 61).

In order to determine respondent's good faith and reasonable cause to refuse service, it is necessary that the history of petitioners' use of the telephone be examined. Such history can start with the discontinuance of service of the twelve trunk lines on June 8, 1950. Such discontinuance was valid (*Matter of Martinelli* v. *New York Tel. Co.*, 279 App. Div. 588, *supra*). During the pendency of the proceeding to test respondent's right to terminate the service, two trunk lines were granted the "Yonkers Daily Times" (Order of Mr. Justice RABIN, June 9, 1950). This was later increased to four trunk lines (Order of Mr. Justice FLANNERY, July 21, 1950). When these could no longer be used, the then proprietors (including the petitioners) acquired a defunct newspaper, "Yonkers Daily Times", and used its telephone facilities to disseminate racing information. When this was halted, petitioners and their associate used, in turn, the facilities of a neighbor and a Bronx newspaper. In each instance the same improper use was made of the telephone. It was only after all telephone facilities had been denied to them that petitioners no longer, apparently, engaged in the business of disseminating racing information.

Just as respondent is free to consult with law enforcement agencies and to be guided by their advice in making a decision as to whether to terminate or discontinue service (*Matter of Shillitani* v. *Valentine,* 296 N. Y. 161), so is it free to consult with and be guided by law enforcement agencies on a question of restoring service. This it has done — and all such agencies recommend against restoral. While the ultimate decision is that of the telephone company, the advice is material on the question of good faith and reasonableness.

The respondent's answer contains, in addition to denials, an affirmative defense documented by affidavits, records on appeal, etc. of the facts above related, and others, to sustain its defense. Petitioners' reply is merely an undocumented general denial of the material allegations of the affirmative defense. They had the right to support such denials by affidavits or other documents (Civ. Prac. Act, § 1292), but either could not or would not. In either case, their naked denials leave them in an unfortunate position.

Upon the papers before it, the court is constrained to hold that petitioners have not shown a clear legal right to the relief requested and that respondents have a right to refuse, and have refused, to restore service because, in good faith, they have reasonable grounds to believe such service, if restored, will be used for prohibited and improper purposes.

Petition dismissed. Settle order on notice.