**PINK, N. Y. Superintendent of Insurance, v. GEORGIA STAGES, Inc.**

No. 12.

District Court, M. D. Georgia, Albany Division.

Sept. 30, 1940.

438

Powell, Goldstein, Frazer & Murphy, of Atlanta, Ga. (M. F. Goldstein and T. Elliott Goldstein, both of Atlanta, Ga., of counsel), for plaintiff.

Hooper, Hooper & Miller, of Atlanta, Ga. (Frank A. Hooper, Jr., and Samuel A. Miller, both of Atlanta, Ga., of counsel), for defendant.

DEAVER, District Judge.

This case was tried to the Court without a jury on the 22nd day of July, 1940, and, after hearing evidence and argument of counsel, the Court makes the following:

Findings of Fact

1. Plaintiff, Louis H. Pink, is a citizen of New York and Superintendent of Insurance of the State of New York.

2. Defendant, Georgia Stages, Inc., is a corporation organized under the laws of Georgia, having its principal office in Dougherty County, within this District.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

4. Auto Mutual Indemnity Company, hereinafter called "The Company", was a mutual casualty insurance company, organized under Article 10-B, § 340 et seq. of the Insurance Law of the State of New York, as added by Laws 1916, c. 13, being Chapter 28 of the Consolidated Laws, and the acts amendatory thereof and supplemental thereto.

5. Said Insurance Company was placed in liquidation on November 24, 1937, in a proceeding in the Supreme Court of the State of New York, entitled "In the matter of the Liquidation of the Auto Mutual Indemnity Company", and, at the time of the filing of this suit, was in process of being liquidated by Louis H. Pink as Superintendent of Insurance of the State of New York as statutory successor to the Company, hereinafter referred to as "The Superintendent".

6. On February 7, 1938, the Supreme Court of New York authorized the levy of an assessment of 40% against "all members of the said Auto Mutual Indemnity Company against whom an assessment might have been levied on November 10th, 1937, the date of the issuance of the order to show cause under Section 408 of the Insurance Law of the State of New York, as added by Laws 1932, c. 191, initiating the rehabilitation proceeding against the said Auto Mutual Indemnity Company".

7. The Superintendent then computed the amount of assessment owed by each member or policyholder, which computa-tions were included as Exhibit "E" in a report made by the Superintendent to the New York Court. The following computations appeared in the aforesaid Exhibit "E":

Assured—Georgia Stages, Inc. and/or
      Coleman Motor Lines,
      133½ E. Jackson St., Thomasville, Ga.
Policy No. AC-54745
Assessment Period: March 27, 1937 to Sept. 27, 1937
Earned Premium:       $8,071.26
Amt. of Assessment     3,228.50
Premium on said policy   1,824.06

   Total ........................................ $5,052.56

Assured—Ader Coach Lines and/or Georgia Stages,
    Inc. 119 N. Jackson St., Albany, Georgia.
Policy No. AC-34313
Assessment Period: Nov. 10, 1936 to March 27, 1937
Earned Premium      $1,329.74
Amount of assessment         $531.90
Policy No. AC-54064
Assessment Period: Jan. 15, 1937 to Nov. 24, 1937
Earned Premium     $ 20.58
Amount of Assessment         8.23
Total (both policies)         540.13

Assured—Coleman Motor Lines, and/or
    Georgia Stages, Inc., Tifton, Ga.
Policy No. AC-30569
Assessment Period: Nov. 10, 1936 to March 27, 1937
Earned Premium     $2,137.27
Amount of Assessment         $854.89

Assured—Drake Motor Lines, Inc. and/or
    Georgia Stages, Inc., Albany, Ga.
Policy No. AC-42096
Assessment period: Nov. 10, 1936 to Mch. 27, 1937
Earned Premium     $ 562.10
Amount of Assessment     224.84
Total Assessments         $4,848.36
Earned-Unpaid Premiums     1,824.06

8. On the basis of the aforesaid report and computations the New York Supreme Court, on August 12, 1938, ordered that each member during the year prior to November 10, 1937, pay the amount assessed against him to the Superintendent on or before September 19, 1938, and to pay such other amounts for which they were indebted, as appeared from the aforesaid Exhibit "E", or, failing to make such payments, to show cause on September 29, 1938, why they should not be held liable to pay such assessments and other indebtedness which they might owe to the Superintendent, and why the Superintendent should not have judgment therefor, together with costs and interest.

9. As required by Section 422 of the New York Insurance Law, as added by Laws 1932, c. 191, notice of this order was mailed to and received by the defendant, Georgia Stages, Inc.

10. None of the aforesaid assessments were paid by the defendant. The defend-

ant did not file any response or objections to the assessments.

10½. As stipulated, it is found that the correct claim of defendant against the Company and the Liquidator for losses covered by Policy No. AC–54745 is $12,502.38, on which defendant has received $1,591.81 from the bonds deposited by the company with the Treasurer of the State of Georgia.

11. Defendant, Georgia Stages, Inc., was organized on November 2, 1936, by S. H. Ader and family, and acquired the proprietary bus operations of the latter, then being conducted under the name of Ader Coach Lines, and has engaged since its organization in the operation of various bus lines.

12. The contract of sale of the Ader Coach Lines to the defendant, Georgia Stages, Inc., dated November 2, 1936, provided that defendant "assumed all outstanding indebtedness, which consists of: (a) Indebtedness to General Motors Acceptance Corporation of Atlanta, Georgia, $11,305.21 on buses; and (b) balance due to D. L. Hobson of Bainbridge, Georgia, five notes of $250.00 each, total $1,250.00."

13. On December 12, 1936, defendant took over the physical equipment of Ader Coach Lines.

14. Ader Coach Lines was the holder of Auto Mutual Policy No. AC–34313, during the period from July 1, 1936, to March 27, 1937.

15. Drake Motor Lines was the holder of Auto Mutual policy No. AC–42096 during the period from November 10, 1936, to March 27, 1937.

16. On December 10, 1936, application was made to the Georgia Public Service Commission for transfer of the certificates of public convenience and necessity of Drake Motor Lines to the defendant, Georgia Stages, Inc., attached to said application being a guaranty of payment by defendant of all legal obligations of Drake Motor Lines, incurred in the operation of Certificates Nos. 1194 and 1195.

17. Policy No. AC–30569 was issued to Coleman Motor Lines by Auto Mutual Indemnity Company, November 10, 1936, and was endorsed by the Company, March 5, 1937, making the assured "Georgia Stages, Inc., and/or Drake Motor Lines, Inc."

18. On December 29, 1936, R. S. Coleman, proprietor of Coleman Motor Lines, agreed to sell all of his equipment, certificates, etc., to the defendant, the transfer to be effective upon final approval by the Interstate Commerce Commission. On the same day application was made to the Georgia Public Service Commission for the transfer of his certificates of public convenience and necessity to the Georgia Stages, Inc., attaching thereto an agreement by defendant, Georgia Stages, Inc., guaranteeing the payment of all liabilities of Coleman Motor Lines, incurred in the operation of Certificates Nos. 139, 1079, 517, 1095, 1175, 13, 1001, 1021, and 1220.

19. Pending the approval of the sale by the Georgia Public Service Commission and the Interstate Commerce Commission, the defendant, Georgia Stages, Inc., on March 1, 1937, took over the operation of the Coleman Motor Lines under agreement dated February 13, 1937, providing, among other things, as follows: "On March 1, 1937, and thereafter Georgia Stages, Inc. will take over, operate and exercise the said certificates, properties, rights and privileges referred to in the said contract of December 29, 1936, operating expenses and liabilities accruing on and after the said date and during the period of this arrangement to be borne and assumed by Georgia Stages, Inc., and the profits and advantages of the said operation from said date to accrue to Georgia Stages, Inc. during the period of this arrangement." This agreement also provided that 40% of the net profits of Georgia Stages, Inc., should be placed to the credit of R. S. Coleman, and should be paid to him if the sale of his certificates of public convenience and necessity was not consummated.

20. The sale to the defendant was later consummated in accordance with the agreement of December 29, 1936, and the previous entries referred to in Finding No. 19 were reversed.

21. Auto Mutual policy No. AC–54064 was issued January 15, 1937 to Ader Coach Lines and/or Georgia Stages, Inc. and cancelled November 24, 1937.

22. On March 27, 1936, Auto Mutual Indemnity Company issued policy No. AC–54745, insuring Georgia Stages, Inc. and/or Coleman Motor Lines, and/or Drake Motor Lines, and/or Ader Coach Lines. This policy on April 13, 1937, was indorsed so as to name as assureds thereunder "Georgia Stages, Inc. and/or Coleman Motor Lines". The policy was cancelled September 27, 1937. The parties to the case stipulated that the premium under

said policy, covering period from March 27, 1937 to September 27, 1937, was $8,071.26.

23. All premiums on the aforesaid policy AC–54745 were paid by the defendant with the exception of $1,824.06, now sued for and admitted by stipulation to be unpaid; and all equipment insured under said policy was operated by defendant.

24. All of the policies of insurance above referred to provide under "Conditions", item 14, as follows:

"14. Dividends.

"The insured shall be entitled to an equitable participation in the funds of the Company in excess of the amounts required to pay all policy and other obligations together with the reserve funds required or permitted by law; such distribution shall be made by the company in accordance with the Insurance Law and the charter and by-laws of the company, based upon the claim experience which shall be computed separately by classes of risks and/or states and territories."

25. Each policy was headed in large, bold type, as follows:

"Auto Mutual Indemnity Company
"(A Mutual Insurance Company
"Herein Called the Company)"

26. At the bottom of the first page of each policy, it appeared that each policy was issued by the "Mutual Insurance Agency" of Atlanta, Georgia, and countersigned by Kenneth Bailey as authorized agent. On the reverse side of page 1 was printed a number of provisions setting forth the conditions of the policy, at the end of which there appeared the facsimile signature of Frank Bailey, President, and Vincent Soulley, Secretary.

27. On the back of policy AC–54745 there appeared the following language, no signature being affixed following it and no reference in the body of the policy being made to it:

"Notice to Policyholders

"1. The insured is hereby notified that by virtue of this Policy he is a member of the Auto Mutual Indemnity Company and is entitled to vote either in person or by proxy at any and all meetings of said company.

"2. The annual meetings are held at the Home Office of the Company in New York City on the second Tuesday of January in each year, at twelve o'clock noon.

"3. The contingent liability of the named Insured under this Policy shall be limited to one year from the expiration or cancellation hereof and shall not exceed the limits provided by the Insurance Law of the State of New York."

Policies AC–42096, AC–54064 and AC–34313 had identical printed "Notice to Policyholders" on the back, except paragraph No. 3, which read, as follows: "3. The contingent liability of the named Insured under this Policy shall be limited to one year from the expiration or cancellation hereof and shall not exceed the limits provided by the Insurance Law of the State of New York or of the State in which the Insured is domiciled and/or this policy is written."

28. In the face of each policy, immediately above the signature of the President and Secretary on each of the above mentioned policies, there appears the following provision:

"15. Declarations.

"By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

29. The Charter of the Auto Mutual Indemnity Company provided:

"Article IV.

"The members of this corporation shall be the policyholders herein, and when any member ceases to be a policyholder, he shall cease at the same time to be a member of the corporation."

30. The By-Laws of the Auto Mutual Indemnity Company contained the identical provision. The By-Laws, Article VI, Subsection 3, also provided that:

"(a) The contingent mutual liability of members for the payment of losses and expenses, not provided for by the corporation, shall not be less than an amount equal to twice the amount of, in addition to, the cash premium written in the policy;

"(b) and if the corporation is not possessed of cash funds * * * sufficient for the payment of incurred losses and expenses, as estimated or determined, it shall make an assessment for the amount needed to pay such losses and expenses upon the

members liable to assessment therefor in proportion to their several liability, and

"(c) Every member shall be liable to pay his proportionate part of any assessment * * * in accordance with the law and his contract."

31. Section 346 of the Insurance Law of the State of New York, as amended by Laws 1923, c. 811, § 7, contains provisions similar to the provisions set out, with the further provision that: "All assessments, whether levied by the board of directors, by the superintendent of insurance in the liquidation of the corporation, or otherwise, shall be for no greater amount than that specified in the policy and by-laws."

32. The insurance laws of the State of New York, Article 11, as amended by the Laws of 1939, Chapter 882, effective January 1, 1940, provide:

"Section 545. Distribution of assets; unclaimed dividends.

"1. Upon the recommendation of the superintendent, the court shall direct the manner in which payments and dividends to creditors shall be made.

"2. If any claimant of another state or foreign country shall be entitled to or shall receive a dividend upon his claim out of a statutory deposit or other asset located in such other state or foreign country, then such claimant shall not be entitled to any further dividend from the superintendent until and unless all other claimants of the same class irrespective of residence or place of the acts or contracts upon which their claims are based shall have received an equal dividend upon their claims; and after such equalization, such claimants shall be entitled to share in the distribution of further dividends by the superintendent along with and alike all other creditors of the same class wheresoever residing."

"Section 546. Continuation of existing proceedings. Every proceeding heretofore commenced under section sixty-three of [the Insurance Laws of New York] or under [the general consolidated laws applicable to insurance], shall be deemed to have been commenced under [the act as amended] for the purpose of conducting such proceedings henceforth."

33. The Supreme Court of New York, in liquidating this Company, entered an order on March 28, 1940, providing for the payment of dividends in accordance with the foregoing Section 545, subdivision (2).

34. The Insurance Laws of the State of New York, Section 420, subd. 2, as added by Laws 1932, c. 191, Chapter 28 of the Consolidated Laws, provide that no set-off shall be allowed against the obligation to pay an assessment levied against a member of a mutual insurer.

35. From the 15th Annual Financial Statement of the Auto Mutual Indemnity Company it appeared that the Company, as of December 31, 1936, had capital note certificates outstanding in the amount of $170,617.13 and a surplus to policyholders of $113,967.48.

36. The Auto Mutual Indemnity Company did not operate as a fraternal or benefit society, nor as a non-profit association having a lodge system. It operated as a regular casualty company, and had a capital set-up consisting of capital loans that were to be paid out of profits, if any. The Company, in its statement, showed a book surplus and it invested this surplus in real estate and mortgages. It also set up a reserve to cover claims.

37. At one time the Company used a form of policy containing an assessment clause. The agents of the Company in some states other than New York found it difficult to sell policies containing such clause. The Company, therefore, prepared for use in those states a rider to be attached to policies by the agents, which riders eliminated the assessment clause and stated that the policy was non-assessable. After complaint from Alabama and investigation by the Insurance Department of New York, the Company endeavored to recall those riders. Thereupon, in an attempt to put out a policy that would be satisfactory from a sales standpoint, and yet meet the requirements of its by-laws modeled after New York law, the Company changed the form of its policies issued outside of New York by taking out of the face of the policy the language as to assessments and printing on the back the "Notice to Policyholders", quoted in Finding No. 27.

38. The Company issued one form of policy in the State of New York and another form of policy in Georgia and Alabama.

39. At the time the Auto Mutual Indemnity Company was admitted to do business in the State of Georgia it had a surplus of $100,000. There was no requirement of the Insurance Department of Georgia that the Company submit a form of

policy and, so far as the Insurance Commissioner of Georgia was concerned, there was no reason why such company could not issue a non-assessable policy in this state.

40. Some insurance companies, with the word "mutual" in their corporate name, including Penn Mutual Life Insurance Company, Hardware Mutual Casualty Company and Lumberman's Mutual Casualty Company, issue non-assessable policies.

In the following conclusions of law the word "policy" is used in the singular as referring to each policy involved.

### Conclusions of Law

■ 1. The court has jurisdiction of the parties and the subject matter.

■ 2. The policy in question is a Georgia contract.

3. The construction of the policy is governed by the law of Georgia.

■ 4. The charter power of the Insurance Company to make such contract depends upon the law of the State of New York.

■ 5. The notation on the back of the policy is not a part of the contract.

■ 6. A mutual insurance company may issue a flat premium non-assessable policy and pay dividends, if so authorized, without destroying the idea of mutuality. Therefore, the words "A Mutual Insurance Company" in the face of the policy and the provision for the payment of dividends did not constitute any notice that the policy was assessable.

■ 7. The policy is in the form of an ordinary flat premium non-assessable policy. It recites that it contains the entire agreement between the parties. A contract may include such recital, and the contract as written is binding upon the parties unless prohibited by law. Nothing can be added to the contract as written, by construction or otherwise, except such terms as may be imposed upon the parties by operation of some valid and applicable law with reference to which the parties are deemed to have contracted. Treating the policy merely as an insurance contract, it is a valid non-assessable policy if the company had charter power to make such a contract. If the company did not have the charter power to issue a non-assessable policy, then the parties made an abortive attempt to contract which resulted in a nullity, but the contract, treated merely as an insurance contract, must stand or fall as made, and a court has no power to make a new contract which the parties themselves did not agree to.

■ 8. Except as to the company's corporate power to contract, the law of New York is not binding on a citizen of this state and would not affect the construction or validity of a contract made in this state. The power of the Insurance Company to make a non-assessable contract in this state, which is valid under the laws of this state, is not limited by reason of the fact that such a contract may be forbidden by the laws of New York, unless there is some provision in its charter or in the general corporation laws of New York so limiting its power.

■ 9. No decision by the highest court of New York dealing with the corporate power of such company to issue a non-assessable policy has been produced. If such policy is within the general scope of business authorized by the charter, it is not ultra vires in the sense that it is absolutely void, though the company may have violated some statutory provision.

The charter itself authorizes the business of automobile insurance and gives power to conduct such business wherever authorized by law. It contains no prohibition against issuing a non-assessable policy.

■ The statute under which the company was organized authorizes the business of automobile insurance and, among other things, provides for assessment of members. The statute says the company shall *in its policies* fix the contingent liability and that each member shall pay his proportionate part of any assessment which may be laid by the corporation in accordance with law and *his contract*. That provision was violated by the company in this case because it omitted from the policy all reference to any contingent liability and issued a cash premium non-assessable policy. The New York statute does not expressly declare that the effect of such violation shall be to render the contract void, and such insurance being within the general scope of business authorized by the statute, the policy is not void. Such violation might be ground for the State of New York to revoke the Company's charter but would not affect the validity of a contract made in another state.

10. The company, having corporate power to issue a non-assessable policy, could issue such policy in this state unless prohibited by local law.

11. Under Georgia Code, § 22-1502: "No foreign corporation shall exercise within this State any corporate powers or privileges which by the Constitution or laws of Georgia are denied or prohibited to corporations created by this State, or the exercise of which is contrary to the public policy of this State, anything in the charter or corporate powers of the foreign corporation to the contrary notwithstanding."

12. Georgia Code, §§ 56-1408 to 56-1425, provide for the organization of mutual insurance companies, and by Section 56-1413 such companies may make contracts of insurance against loss or damage to person or property occasioned by the operation of motor vehicles. Under Section 56-1417 the maximum premium may be a cash premium and an additional contingent premium, or may be solely a cash premium if there is a surplus of $100,000. The charter power of such mutual company in this State is to write automobile casualty insurance. It has power to write assessable or non-assessable policies, and the requirement that the company have a surplus of $100,000 before it may issue a non-assessable policy was met in this case because the company when admitted to this State had $100,000 surplus, and was, therefore, not prohibited by that local limitation from issuing a cash premium policy.

13. Under Georgia Code, section 22-1505: "Where a foreign corporation does business in this State and relies upon provisions in its charter different from those imposed by the law of this State under similar circumstances, it must show that the opposite party had notice of such provisions at the time the contract was made."

14. By Section 56-1417 the maximum premium must be expressed in the policy or in the application. The Company has charter power, in the sense that the contract would not be ultra vires, to write an assessable policy without saying so in the policy or in the application, but the law, aside from corporate power, makes it impossible to issue an assessable policy without saying so because if a cash premium only is expressed in the policy the law construes the cash premium as the maximum premium and the policy as non-assessable. Therefore, a policy issued in Georgia by a foreign company which expresses only a cash premium, no additional premium being expressed in the application for the policy, is, according to the Georgia law, a non-assessable policy, and would not for that reason be prohibited by any local law. If the company attempted to issue an assessable policy without any agreement to that effect between the parties in the policy or in the application for the policy, the policy expressing only a cash premium, the company would be attempting to exercise a privilege denied by the law of Georgia to mutual companies in this State. By Section 22-1502 that privilege cannot be exercised by a foreign mutual company, anything in its charter to the contrary notwithstanding.

15. If plaintiff relies upon any provision in the Company's charter to authorize an assessment not expressed in the contract, then such provision is different from those imposed by the law of this state under similar circumstances, because the provision imposed upon mutual companies in this state is that if a policy expresses solely a cash premium it is non-assessable. Therefore, under Code § 22-1505, the plaintiff has the burden of showing that the defendant had notice of such provision at the time the contract was made.

Nothing contained in the policy constitutes notice to the insured of any provision in the company's charter on which the plaintiff may rely with reference to an assessment, and there is no proof of notice given in any other way.

16. Aside, therefore, from any obligation which may be founded peculiarly upon the status of the insured as a "member" of the company, the contract between the parties constitutes a valid non-assessable policy of insurance, and the defendant is not subject to assessment by virtue of the contract entered into, but is liable for the unpaid portion of the premium.

17. If defendant became a "member" of the company, in the sense that a stockholder is a member, the rights, privileges and liabilities of the defendant as a "member" are to be determined by the New York Law; but the contract which is relied on as making the defendant a "member" is a Georgia contract and is governed as to interpretation and effect by the Georgia law. The defendant cannot be made a "member" of the New York corporation without his consent, and whether

he consented to become a member must be determined from the contract which he entered into. Neither the charter of the company nor its by-laws nor any provision of any New York statute can operate to make the defendant a "member" unless he contracted with reference to said charter or by-law or New York statute, as would have been the case if the contract had been entered into in New York, or if they had by reference in the contract been adopted.

Whatever may be the statute law in New York, it is not a rule of such general acceptance that this court should apply it, that the mere making of a contract of insurance with a mutual insurance company makes the insured a "member" of such company, and there is nothing in the policy itself or in the contract between the parties to show an intent that the insured become a "member" of the company. On the contrary, the contract is an ordinary flat premium contract, which negatives any such implication.

Therefore, the mere acceptance of the policy did not operate to make the insured a "member" of plaintiff company, and there is nothing else in the record to show its assent to becoming a member.

But even if defendant by accepting the policy in Georgia became a member of the New York corporation, the liabilities thereby assumed resulted from the transaction by the company of the business of selling insurance in Georgia and was essentially a liability assumed by the defendant by reason of the contract of insurance which was entered into in Georgia. If the obligations of memberships as such are in conflict with the contractual obligations created by the insurance contract as such, then the former must give way to the latter as respects insurance contracts written in Georgia; and, even if the New York statute law enters into the membership status of the insured, it does not enter into the status of the insured as a part to the insurance contract.

To impose upon the insured a liability as a member to which he did not assent would be in direct conflict with the terms of the insurance contract which the parties entered into; and, since the insured did not have notice of the New York statute or charter provision relied on to impose such liability, they are not binding upon the insured.

The defendant was not a member of the plaintiff company and was not a party to the liquidation proceedings in the New York Court and is not bound by those proceedings. In no event was the defendant bound even as a member, except as to the necessity and amount of the assessment.

18. The defendant is not entitled to set off the $1,824.06 unpaid premium against its claim in the sum of $12,502.38 for losses insured against by policy No. AC-54745.

19. Plaintiff is entitled to recover the unpaid portion of the premium.