PINK, SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, *v.* A. A. A. HIGHWAY EXPRESS, INC. ET AL.

No. 48. Argued November 19, 1941.—Decided December 8, 1941.

*Mr. Max F. Goldstein,* with whom *Messrs. Alfred C. Bennett, Arthur G. Powell, Burket D. Murphy, James N. Frazer,* and *James W. Dorsey* were on the brief, for petitioner.

*Mr. Frank A. Hooper, Jr.,* with whom *Messrs. T. Baldwin Martin, A. O. B. Sparks,* and *Samuel A. Miller* were on the brief, for respondents.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Petitioner, as Superintendent of Insurance for the State of New York, is the statutory liquidator of Auto Mutual Indemnity Company, an insolvent mutual insurance company, organized under the laws of New York. He brought this suit in the Superior Court of Georgia against respondents, who are residents of Georgia and policyholders in the company, to recover assessments alleged to be due by

virtue of their membership in it. The Supreme Court of Georgia affirmed the judgment of the trial court, dismissing the petition on demurrers of the several respondents. 191 Ga. 502, 13 S. E. 2d 337. We granted certiorari, 313 U. S. 555, because of the asserted denial by Georgia of full faith and credit to certain statutes and judicial proceedings in New York, under which the assessment was levied.

The relevant facts set out in the amended petition are as follows: The Indemnity Company, organized in 1932 under Article 10–B of the New York Insurance Law, was, on application of the Superintendent of Insurance, placed in liquidation by order of the New York Supreme Court on November 24, 1937. Upon further proceedings, pursuant to § 422 of the New York Insurance Law, the court ordered, August 12, 1938, that each member of the Indemnity Company, during the year prior to November 10, 1937, should pay assessments in specified amounts aggregating 40% of premiums earned by the company during that year. The order directed that the members show cause on a specified date why they should not be held liable to pay and why the Superintendent should not have judgment for such assessments. Pursuant to § 422 and the order, the Superintendent mailed notice of the order to each policyholder, including respondents. None of respondents entered an appearance. It is alleged that all "were policyholders and members of the Company" during the year mentioned; that at the time when each purchased his policy and became a member there was in force § 346 of the New York Insurance Law, which under New York statutes and judicial decisions became a part of the insurance contract, binding upon each policyholder. Section 346 provides that every mutual insurance company "shall in its by-laws and policies fix the contingent mutual liability of the members for the payment of losses and expenses not provided for by its admitted assets" to a spec-

ified extent, and that "all assessments, whether levied by the board of directors, by the Superintendent of Insurance in the liquidation of the corporation, or otherwise, shall be for no greater amount than that specified in the policy and by-laws." It is further alleged that the assessment made against respondents was for their pro rata share of the 40% assessment levied by order of the court pursuant to the statutes of New York and the by-laws of the company, and was confirmed as to members, including respondents, by the order of November 17, 1938. The form of policy acquired by respondents is by reference made a part of the petition.

The Supreme Court of Georgia, construing the amended petition as a whole, took its averment that respondents "were policyholders and members of the company" to mean that they were members because they were policyholders. That construction has not been challenged and we adopt it here. The court accepted the allegations of the meaning and effect of the New York statutes and judicial decisions as correct, but held that respondents, none of whom was made a party to the New York proceedings by service of process, were not concluded by the New York orders and statutes on the question whether their relation as policyholders to the company was such as to subject them to liability.

Examining the contract embodied in the policies, the court found that although the name of the company contained the word "mutual" the contracts of insurance were without any term or provision purporting to make the policyholder a member of a mutual company or to subject him to assessment. Each policy provided that the insured agrees that it "embodies all agreements existing between himself and the company or any of its agents relating to this insurance." Printed on the back of each policy but not referred to in the contract was a "Notice to policyholders" that "the insured is hereby notified

that by virtue of this policy he is a member of the Auto Mutual Indemnity Company," and that "the contingent liability of the named insured under this policy shall be limited to one year from the expiration or cancellation hereof and shall not exceed the limits provided by the Insurance Law of the State of New York," there being on the face of the policy no reference to any contingent liability or assessment or to any law providing for such. The petition does not make it clear where the policies were delivered to respondents, and the court held that in the absence of a showing to the contrary they were governed by Georgia law.

Applying to this state of facts the law and policy of Georgia derived from its statutes and judicial decisions, the court held that the relation between the insured and the company was that of contract, that the whole contract was embodied in the stipulations appearing on the face of the policy, and that it did not by its provisions make respondents members of the company or subject them to assessment in accordance with the laws of New York or otherwise. Petitioner challenges the judgment on the ground that it fails to accord to the New York orders and statutes the full faith and credit to which they are entitled under Article IV, § 1 of the Constitution.

While urging in brief and argument that all those who are shown to be members of the Indemnity Company are bound by the New York adjudication as to the necessity for and amount of the assessment, petitioner does not specifically urge that the New York proceedings have established the personal liability of respondents for the assessments which have been ordered. He could not well do so, for the proceeding in the New York courts to determine what judgments should be entered against the policyholders, including nonresidents, and the judgments actually entered, do not appear to have been made a part of the present record. See *In re Auto Mutual Indemnity*

*Co.,* 14 N. Y. S. 2d 601. In any case, it suffices for present purposes to say that New York does not attribute any such effect to the judgments of her courts rendered against absent nonresident defendants. See *Kittredge* v. *Grannis,* 244 N. Y. 182, 192–96, 155 N. E. 93; *Geary* v. *Geary,* 272 N. Y. 390, 398, 6 N. E. 2d 67; cf. *Pope* v. *Heckscher,* 266 N. Y. 114, 194 N. E. 53; *Hood* v. *Guaranty Trust Co.,* 270 N. Y. 17, 200 N. E. 55. Such was the ruling in the New York proceeding for the liquidation of the Indemnity Company with which we are here concerned. See *In re Auto Mutual Indemnity Co., supra,* 611, where the referee's opinion states: ". . . no personal judgment will be ordered against non-resident members or policyholders who have not appeared generally or been served personally with process within the State, although, as hereinabove set forth, they are bound by the finding of the necessity for the assessment and the amount thereof."

It is a familiar rule that those who become stockholders in a corporation subject themselves to liability for assessment when made in conformity to the statutes of the state of its organization, although they are not made parties to the proceeding for levying it. *Hawkins* v. *Glenn,* 131 U. S. 319; *Hancock National Bank* v. *Farnum,* 176 U. S. 640; *Bernheimer* v. *Converse,* 206 U. S. 516; *Converse* v. *Hamilton,* 224 U. S. 243, 260; *Selig* v. *Hamilton,* 234 U. S. 652; *Marin* v. *Augedahl,* 247 U. S. 142; *Broderick* v. *Rosner,* 294 U. S. 629; *Chandler* v. *Peketz,* 297 U. S. 609. Whether we support these legal consequences by reference to consent of the stockholder or to his assumption of a corporate relationship subject to the regulatory power of the State of incorporation, in either case the procedure conforms to accepted principles, involves no want of due process, and is entitled to full faith and credit so far as the necessity and amount of the assessment are concerned. See *Christopher* v. *Brusselback,* 302 U. S. 500, and cases cited. The like principle has been consistently applied

to mutual insurance associations, where the fact that the policyholders were members was not contested. *Royal Arcanum* v. *Green,* 237 U. S. 531; *Modern Woodmen* v. *Mixer,* 267 U. S. 544. The Supreme Court of Georgia found it unnecessary to consider the application of these authorities to the present case, since it decided that respondents, by acquiring the particular form of policy issued by the Indemnity Company, did not become members of it.

It is evident that if the constitutional authority of the Indemnity Company to stand in judgment for its absent members turns on their consent or their assumption of membership in the Company, respondents, who were not parties to the New York proceedings, may defend on the ground that they never became members because they have done no act signifying such consent or assumption. After an assessment has been lawfully levied on the members of a corporation, it is still open to any who were not parties to the assessment proceeding to defend on the ground that they never became stockholders. *Great Western Telegraph Co.* v. *Purdy,* 162 U. S. 329, 336–37; *Coe* v. *Armour Fertilizer Works,* 237 U. S. 413, 423; *Royal Arcanum* v. *Green,* 237 U. S. 531, 544; *Chandler* v. *Peketz,* 297 U. S. 609, 611; cf. *Hawkins* v. *Glenn,* 131 U. S. 319, 335. Ordinarily this means no more than that they have not acquired or owned stock in the corporation during the relevant period. For a necessary consequence of becoming a stockholder is the assumption of those obligations which, by the laws governing the organization and management of the corporation, attach to stock ownership.

Other considerations may be significant in determining whether a membership in a mutual insurance company has been effected through acquisition of a policy. A mere contract is not a share of stock and when made with a corporation or association does not necessarily connote membership in it. A policy of insurance may be a contract

whose terms purport to define completely the relationship and obligations of the parties. Here the policy, which was on its face a contract and nothing more, stipulated only for obligations to be performed by the insurer upon payment of the prescribed premium. The policy's stipulations contained no provision making the insured a member of the association or subjecting him to liability for assessment as such. Although the company was denominated "mutual," that term does not necessarily signify that policyholders are members or subject to assessment.

Without the command of some constitutionally controlling statute, the Georgia court was free to interpret the obligation of the policy as limited to those stipulations expressed on its face and as excluding any stipulation for membership or for liability to assessment which the contract did not mention. Petitioner finds such a command in the New York statutes, which, he asserts, make all policyholders liable to assessment without the aid of any stipulation to that effect in the policy. He relies on the full faith and credit clause to exact obedience to the statutes.

Every state has authority under the Constitution to establish laws, through both its judicial and its legislative arms, which are controlling upon its inhabitants and domestic affairs. When it is demanded in the domestic forum that the operation of those laws be supplanted by the statute of another state, that forum is not bound, apart from the full faith and credit clause, to yield to the demand, and the law of neither can, by its own force, determine the choice of law for the other. *Milwaukee County* v. *White Co.*, 296 U. S. 268, 272; *Pacific Ins. Co.* v. *Commission*, 306 U. S. 493, 500; *Kryger* v. *Wilson*, 242 U. S. 171, 176; *Union Trust Co.* v. *Grosman*, 245 U. S. 412; *Griffin* v. *McCoach*, 313 U. S. 498.

To the extent that Georgia must give full faith and credit to the New York statutes and judicial proceedings,

it must be denied authority to adjudicate the meaning and domestic effect under its own laws of a contract entered into by its own inhabitants and containing no stipulation that they should be bound by obligations extrinsically imposed by New York law. But the full faith and credit clause is not an inexorable and unqualified command. It leaves some scope for state control within its borders of affairs which are peculiarly its own. This Court has often recognized that, consistently with the appropriate application of the full faith and credit clause, there are limits to the extent to which the laws and policy of one state may be subordinated to those of another. *Alaska Packers Assn.* v. *Commission,* 294 U. S. 532; *Pacific Ins. Co.* v. *Commission,* 306 U. S. 493; *Klaxon Co.* v. *Stentor Co.,* 313 U. S. 487, 497–98; see *Milwaukee County* v. *White Co.,* 296 U. S. 268, 273.

It was the purpose of that provision to preserve rights acquired or confirmed under the public acts and judicial proceedings of one state by requiring recognition of their validity in others. But the very nature of the federal union of states, to each of which is reserved the sovereign right to make its own laws, precludes resort to the Constitution as the means for compelling one state wholly to subordinate its own laws and policy concerning its peculiarly domestic affairs to the laws and policy of others. When such conflict of interest arises, it is for this Court to resolve it by determining how far the full faith and credit clause demands the qualification or denial of rights asserted under the laws of one state, that of the forum, by the public acts and judicial proceedings of another. See *Alaska Packers Assn.* v. *Commission,* 294 U. S. 532, 547; *Pacific Ins. Co.* v. *Commission,* 306 U. S. 493.

Where a resident of one state has by stipulation or stock ownership become a member of a corporation or association of another, the state of his residence may have no such domestic interest in preventing him from fulfilling the obligations of membership as would admit of a restricted

application of the full faith and credit clause. But it does have a legitimate interest in determining whether its residents have assented to membership obligations sought to be imposed on them by extrastate law to which they are not otherwise subject.

Without the aid of agreement or consent, the laws of the state of organization can be imposed on Georgia courts and policyholders only so far as the full faith and credit clause compels it. The undue extension of the statutes and authority of a state beyond its own borders, by the expedient of rendering a judgment against non-citizens over whose persons or property the state has acquired jurisdiction, may infringe due process. *Home Ins. Co.* v. *Dick,* 281 U. S. 397. Like, but more cogent, reasons may call for the restriction of the full faith and credit clause as the instrument for controlling the law and policy of one state, with respect to its domestic affairs, by the statutory command of another.

The interpretation and legal effect of policies of insurance entered into by the inhabitants of Georgia, who are sued upon them in its courts, are peculiarly matters of local concern. *Griffin* v. *McCoach,* 313 U. S. 498. Were it not for the New York statute, there could be no question of Georgia's authority to adjudicate the rights and obligations arising under the policies. And as we have seen, the only basis for the imposition by New York of its command on the Georgia court and policyholders is the assumption by the latter of membership in the New York company. But this, in the circumstances of this case, depends upon the meaning and effect of all the provisions appearing on the policies with respect to the assumption of membership, which is for Georgia to determine. There being no question of evasion of constitutional obligation, we accept that determination as one of domestic law and policy which the full faith and credit clause does not override.

*Affirmed.*