## MILLER v. BARNWELL BROS., Inc.
### No. 5041.

Circuit Court of Appeals, Fourth Circuit.
Aug. 2, 1943.

William T. Joyner, of Raleigh, N. C.
(Joyner and Yarborough, of Raleigh, N.

C., and Beckman, Healy, Reid & Hough, of Chicago, Ill., on the brief), for appellant.

Thomas D. Cooper, of Burlington, N. C. (Cooper & Sanders, of Burlington, N. C., on the brief), for appellee.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

Cross appeals were taken in this case from the judgment of the District Court whereby it was decreed that the receiver of the Central Mutual Insurance Company of Chicago recover the sum of $9,964.35 from Barnwell Brothers, Inc. of North Carolina, the defendant, who held policies of insurance therein. The judgment was based upon an assessment of 100 per cent of the cash premiums specified in two public liability policies of insurance issued to the defendant by the Insurance Company; and the assessment was ordered on March 19, 1940 by the Circuit Court for Cook County, Illinois, in a proceeding wherein the Insurance Company had been adjudicated an insolvent on January 11, 1937 and the receiver had been appointed to liquidate its affairs. The defendant appealed for the reasons amongst others that it was not bound by the determination of the Illinois court as to the necessity for or the amount of the assessment, since it was not a party to the proceeding; that the contracts of insurance were void because of fraudulent statements made by the president of the Insurance Company, and that the receiver's claim was barred by limitations. The receiver appealed on the ground that the amount of the judgment was less than the 100 per cent assessment ordered by the Illinois court with interest from the date of the receiver's demand.

In 1934 and subsequent years Barnwell Brothers, the defendant, operated a trucking business between points in North Carolina and New York, as a public carrier of goods for hire. North Carolina and other States required the defendant as a condition of continued operation to carry public liability insurance protecting persons from loss from bodily injury and property damage, and also required that copies of the policies be deposited with the State authorities. In September, 1934 an insurance policy of this character, which defendant had been carrying in another company, expired, and in its place defendant secured a policy from the Insurance Company herein, and filed it with the Utilities Commission of North Carolina in December, 1934. On January 8, 1935 the Insurance Company qualified to do business in North Carolina and on January 9 the defendant delivered to the Utilities Commission of North Carolina in substitution another policy of the same company, which had been delivered to the defendant in New York on December 13, 1934, where the insurance company was not qualified to do business. Subsequent to December 13, 1934, copies of this policy were filed with the public control bodies of eight or more jurisdictions so as to comply with their local requirements. This policy expired on December 21, 1935 and was not renewed. The monthly premium specified in the policy was $1,649.92 and the total amount earned and paid during the life of the policy was $20,006.12, but the premium earned and paid from January 31, 1935, the beginning of the period of insolvency of the Insurance Company to December 21, 1935, was $17,807.79. This policy contained the following clauses as to changes in the policy and the contingent liability of the assured thereunder:

"S. An agent has no authority to change this policy, or to waive any of its provisions, nor shall notice to any agent or knowledge of his or any other person be held to effect a waiver or change this contract or any part of it. No change whatever in this policy, and no waiver of its provisions, shall be valid unless an endorsement be added hereto, signed by the president and secretary of the company, expressing such change or waiver."

"The contingent liability of the assured hereunder is limited to one time the premium named herein and no more. The assured is given and hereby accepts notice that by virtue of this policy he is a member of the Central Mutual Insurance Company of Chicago and that the annual meetings of the company are held at its home office in Chicago, Illinois, the first Thursday following the second Monday of February in each year."

On May 16, 1935 the Insurance Company issued to Barnwell Brothers another public liability insurance policy which became effective April 1, 1935 for the period of one year and was cancelled by Barnwell Brothers, in accordance with the terms of the policy on December 21, 1935.

A copy of this policy was delivered by the defendant to the Utilities Commission of North Carolina on May 16, 1935.

Premiums aggregating $2,763.97 were earned and paid on this policy during its life. The policy likewise contained a provision that the contingent liability of the assured was limited to one time the premium named in the policy. The receiver made demand upon the defendant for the payment of the assessment upon the first policy on July 20, 1940 and upon the second policy on February 6, 1941.

The receiver concedes that his recovery is limited to an amount equal to the premiums earned and paid from January 31, 1935, the beginning of the period of insolvency, to December 21, 1935, the end of the life of the policies, that is, $17,807.79 on the first policy and $2,763.97 on the second policy, or $20,571.73 in all. The District Court, however, allowed only 48.31 per cent of this amount, or $9,964.35, because a summary filed by the receiver in the Illinois case indicated that the gross deficiency bore this ratio to the contingent liability of the policy holders for the period. The District Court found that no appraisal of the collectibility of the liability had been shown and therefore assumed that the entire amount was collectible, and applied that percentage to the premiums paid by the defendant and reached the sum indicated above.

Fundamental to any recovery by the receiver of the Insurance Company in this case is the determination of the District Court that the defendant, although not a party to the Illinois case, was bound by the decree of the Illinois court as to the necessity for a 100 per cent assessment upon the policy holders. That suit was brought on behalf of the People on the relation of Ernest Palmer, Director of Insurance of the State of Illinois v. Central Mutual Insurance Company, and the judgment which authorized the receiver to levy an assessment of 100 per cent upon the policy holders was affirmed by the appellate court, 313 Ill.App. 84, 39 N.E.2d 400. The defendant contends that neither the complaint nor the evidence offered by the receiver supports the judgment in the pending case against the defendant because the statutes of Illinois, governing the liquidation of insurance companies on January 11, 1937 when the Central Mutual Insurance Company was decreed to be insolvent, provided no machinery for the levying of an assessment or the enforcement of the contingent liability of the policy holders by a receiver's suit or otherwise.

■ The existence under a statute or contract of an additional liability of shareholders or members of a corporation for the corporation's debts does not deprive them of their day in court to resist the imposition of an assessment, unless some procedure has been set up by statute or contract under which the corporation may be brought into court for the determination of insolvency and the amount of an assessment. If such mechanism is provided, the shareholders are deemed by virtue of their membership to be bound by the determination as to the necessity for and the amount of the assessment although they are not named as parties to the proceeding or served with process. When suit is brought against them for collection of the assessment they may show that they are not members or shareholders of the corporation, but may not dispute the assessment itself. For example, it was held in Christopher v. Brusselback, 302 U.S. 500, 58 S.Ct. 16, 82 L.Ed. 518, that the statutory liability of the shareholders of a joint stock land bank for the debts of the bank to the extent of the par value of their stock could be enforced only by suit against them wherever they might be found; and that in such suit the insolvency of the bank and the amount of the needed assessment were essential elements of the cause of action that were not supplied by the previous determination of the court in a creditors' suit to which the stockholders were not parties. The decision was based upon the ground that although the liability of the shareholders for the debts of the bank was fixed by the statute, it did not set up any machinery comparable to that of the National Banking Act, 12 U.S.C.A. § 21 et seq., for enforcing the liability.

The converse of this proposition was held to be the law in Pink v. A.A.A. Highway Express, 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152, 137 A.L.R. 957, under a New York statute, Insurance Law, § 346, as amended by Laws 1923, c. 811, § 7, Consol.Laws N.Y. c. 28, which provided that any mutual insurance company shall specify the extent of the contingent liability of members for losses and that "all assessments, whether levied by the board

of directors, by the superintendent of insurance in the liquidation of the corporation, or otherwise, shall be for no greater amount than that specified." The court said: (314 U.S. at page 207, 62 S.Ct. at page 245, 86 L.Ed. 152, 137 A.L.R. 957)

"It is a familiar rule that those who become stockholders in a corporation subject themselves to liability for assessment when made in conformity to the statutes of the state of its organization, although they are not made parties to the proceeding for levying it. * * * Whether we support these legal consequences by reference to consent of the stockholder or to his assumption of a corporate relationship subject to the regulatory power of the state of incorporation, in either case the procedure conforms to accepted principles, involves no want of due process, and is entitled to full faith and credit so far as the necessity and amount of the assessment are concerned. See Christopher v. Brusselback, 302 U.S. 500, 58 S.Ct. 350 [16], 82 L.Ed. 388 [518], and cases cited. The like principle has been consistently applied to mutual insurance associations, where the fact that the policyholders were members was not contested."

The Illinois appellate court in People v. Central Mutual Insurance Company, supra, considered this question and determined that the Circuit Court for Cook County had the power and authority under the statutes of the state to direct the receiver of the Insurance Company to levy an assessment upon the policyholders in the liquidation proceeding. It was shown that the Insurance Company was chartered in Illinois on October 22, 1926 under the Act of the Legislature of Illinois of July 1, 1915, Laws 1915, p. 485, wherein it was provided that every policyholder of a mutual· insurance company should be a member and that the by-laws should provide for a cash premium and might limit the contingent liability of the members to not less than one nor more than ten times the cash premium expressed in the policy. The by-laws of the Insurance Company herein provided that the Board of Directors should exercise all powers not prohibited by the statute or the by-laws of the company and should have power to prescribe when and how payments of premiums and assessment should be made, but that the contingent liability of any member should not exceed the amount of the premiums expressed in the policy. The Act of 1915 provided that when the company's assets were not equal to its liabilities, the company should make an assessment upon its members to provide for the deficiency. 318 Ill.App. 84, 39 N.E.2d 402, 408.

An Act of the State legislature, which went into effect on July 1, 1925, Laws 1925, p. 446, also provided for the liquidation and dissolution of insurance companies. The statute made no express provision for an assessment by the receiver but empowered the receiver, appointed by the State Director of Insurance, to take possession of the property and conduct the business of the company under the control of the court, and that if the court should order a liquidation, it should be made under the direction of the receiver who should be vested with title to all the property and contract rights of action of the company. 318 Ill.App. 84, 39 N.E.2d 402, 406.

It was under this liquidation statute that proceedings were instituted against the Insurance Company in the Circuit Court for Cook County on January 8, 1937, and the decree of assessment was issued on March 19, 1940 after the introduction of evidence showing the insolvency of the company, a deficiency of assets and the need for a 100 per cent assessment. The Act of 1925 was repealed during the pendency of the proceeding by the Act of July 1, 1937, Ill.Rev. St.1941, c. 73, § 613 et seq., which provided, however, that the repeal should not affect any rights accrued or established, or any liability or penalty incurred under any repealed law prior to the repeal, but every proceeding commenced under the Act of 1925 should be continued as if it had not been repealed. 318 Ill.App. 84, 39 N.E.2d 402.

The Act of July 1, 1937 further provided that the rights and liabilities of the company and its policyholders should be fixed as of the date of the order of liquidation, and that in the event of liquidation the Director of Insurance of the State, with leave of court, might levy an assessment against the members to the same extent that such assessment might have been levied by the Board of Directors, and that such assessment should become due and payable upon the levy by the Director and cover the excess of the probable liabilities over the reasonable value of the assets, together with the cost of collection and probable percentage of uncollectibility

thereof, and it was further provided that assessments in proceedings commenced under the Act of 1925 might be made in accordance with the Act of 1937. 318 Ill. App. 84, 39 N.E.2d 404.

In reliance on these statutes the Insurance Company objected in the Illinois case to the order of court of March 19, 1940 directing the assessment, and contended that the receiver had no power under the Act of 1925 to levy such an assessment and the court had no power to direct him to do so because the only statutory provision prior to 1937 for levying an assessment was to be found in the Act of 1915, which gave the company, as a going concern, the power to levy an assessment only until a proceeding for liquidation should be filed; and while the Act of 1937 conferred the power of assessment upon the Director in a proceeding commenced under the Act of 1925, such an assessment must be made by the Director and not by the receiver appointed by him as in this case. But the Illinois court held that under the Act of 1925 the receiver had the same power with respect to the levy of an assessment as the board of directors had before insolvency. The court said, 39 N.E.2d 409:

"Because of these circumstances, the levy of an assessment on policyholders is nothing more nor less than the exercise, by the receiver, of contractual rights vested in him by the liquidation decree, and amounts to no more than a demand for payment of the contingent liability which they assumed; and the levy is, in essence, a demand by the receiver of the assets in liquidation, title to which was vested in him, for payment of this liability. The mere fact that the power and duty of levying assessments is lodged by statute in the board of directors, and not in the receiver, should not defeat the levy when application is made to a court of equity for the necessary relief, because the directors failed to act. 'He was, in fact, the corporation itself for all the purposes of winding up its affairs'. Relfe v. Rundle, [103 U.S. 222, 26 L.Ed. 337]."

The binding force of this decision upon non-resident policyholders, who were not parties to the suit, was recognized by the court, as is shown by its citation of Swing, Trustee, v. American Glucose Co., 123 Ill. App. 156, which it summarized as follows, 39 N.E.2d 408:

"The court's conclusion was there predicated upon the principle that the stockholders and members of a corporation are an integral part thereof, are represented in court by the corporation, and a decree against the corporation is not open to collateral attack by stockholders or members when sued upon an assessment so made by a court having jurisdiction of the corporation. It will be recalled that in the case at bar many thousands of the policyholders to be assessed are nonresidents of Illinois, and this decision, citing numerous other cases, relies on the principle usually invoked in proceedings of this character."

■ This review by the Illinois appellate court of the corporate history of the Insurance Company and of the state statutes relating to the formation and liquidation of mutual insurance companies clearly shows that the Illinois statutes in effect at the time of the institution of the liquidation proceeding not only provided for the contingent liability of the policyholders of a mutual insurance company, but also set up machinery, both under the Act of 1925 and the Act of 1937, wherein this liability might be enforced; and that one who became a policyholder in such a corporation subjected himself to liability for an assessment when made in conformity with the statute, even though he was not joined as a party to the proceeding in which the levy was authorized by the court. For similar decisions see Lincoln Bus Co. v. Jersey Mutual Gas Co., 112 N.J.Eq. 538, 165 A. 112; Morrow v. Vaughan-Bassett Furniture Co., 173 Va. 417, 4 S.E.2d 399; Taggert v. Wachter, Hoskins & Russell, 179 Md. 608, 21 A.2d 141, 141 A.L.R. 751; see, also, Gaston v. Keehn, Receiver, Ga.App., 26 S.E. 2d 107, June 8, 1943, in which the court held that the decree of the Illinois court was binding upon a Georgia policyholder.

■ It follows, that insofar as the necessity for an assessment was concerned the defendant in the pending case is concluded by the Illinois decree, as the District Judge held; but by the same reasoning the decree of the Illinois court, as to the need for a 100 per cent assessment, should also have been given effect. The District Court allowed only an assessment of 48.31 per cent of the premium paid by the defendant, because a summary of the gross deficiency and of premiums received by the company by months, during the period for which the defendant was liable, indicated a gross deficiency of $1,424,004.14 and premiums of $2,949,345, or a net deficiency of 48.31 per cent; and since no appraisal of

the collectibility of the premiums was shown, the District Court said that it could not presume that any part thereof would have been uncollectible. The amount of premiums paid by the defendant during the period of insolvency amounted to $17,807.79 under the first policy and $2,763.97 under the second policy, or $20,571.76, of which the District Court allowed 48.31 per cent or $9,964.35.

■ In our view this reduction of the liability of the defendant was erroneous because it substituted the determination of the District Court for that of the Illinois court, and failed to give to the latter the full faith and credit to which it is entitled under Article IV, § 1 of the Federal Constitution. The decision of the Illinois appellate court in People v. Central Mutual Insurance Company, supra, shows that the question of collectibility of the assessment was in the mind of the court. The defendant in that case made the contention that the assessment was levied prematurely before the probable liabilities over the reasonable value of the assets had been ascertained. Upon this point the court said, 39 N.E.2d 405:

"It must be conceded, of course, that probable liabilities and probable value of assets should be considered by the receiver so far as necessary to enable him, in good faith, to come to an honest conclusion as to the need of an assessment and the amount of assessment needed, but in this proceeding it was never contended that the estate in liquidation would pay its creditors any substantial percentage on their claims since, figured at best, there would be a deficiency in excess of $500,000. Defendant's counsel evidently recognized the inherent difficulties in collecting the assessments and the probability that dividends to creditors would be negligible, for in opposition to the receiver's motion to dismiss the appeal, while the case was here pending, he said that 'The usual dividend declared in these types of cases is very small, if at all. Experience teaches that in most cases no dividend is paid.' Under the circumstances, we think the method employed by the receiver and the necessity for levying a 100 per cent assessment were amply justified."

The findings should have been accepted as binding by the District Court.

The receiver complains of the failure of the District Court to allow interest at the rate of 6 per cent per annum on $17,807.89, the amount of the assessment due on the first policy from July 20, 1940, the date of the receiver's demand for payment by the defendant, and at the same rate on $2,-763.97, the amount of the assessment due on the second policy from February 6, 1941, the date of the receiver's demand on the defendant. Section 2309 of the North Carolina Code of 1939 provides:

"All sums of money due by contract of any kind, excepting money due on penal bonds, shall bear interest, and when a jury shall render a verdict therefor they shall distinguish the principal from the sum allowed as interest; and the principal sum due on all such contracts shall bear interest from the time of rendering judgment thereon until it is paid and satisfied * * *."

■ Under this statute, interest should be allowed on the assessments under the policies in suit from the dates of the respective demands by the receiver. When the judgment of the Illinois court directing an assessment of 100 per cent was rendered, the liability of the defendant policyholder under its contracts was determined and the precise amount of the sums due, that is, the premiums paid by the policyholder during the period of insolvency was easily ascertainable and should have been paid upon demand. It is true that the receiver demanded more than was due, that is, he demanded and sued for $20,006.12 under the first policy and $3,827.10 under the second policy, that is, the full amount of the premium paid under the first policy between its effective date on January 9, 1935 and its termination on December 21, 1935 and the full amount of the premium on the second policy for the year beginning April 1, 1935, but the defendant could have tendered the correct amount and stopped the running of interest if it had seen fit to do so.

The decisions of the Supreme Court of North Carolina support the allowance of interest in this case. It is of no moment that the existence of liability and the amount thereof were in dispute. Thus it was held in Kester v. Miller, 119 N.C. 475, 26 S.E. 115, where no mention of the statute was made and the plaintiffs sued for the purchase price of an engine which proved to be defective and the jury allowed less than the contract price, plaintiffs were held entitled to interest on the sum found to be due. Again in Thomas v. Piedmont Realty & Development Co., 195 N.C. 591, 143 S.E. 144, it was held that the plaintiff was entitled to interest on the

reasonable value of his services as a real estate broker, as found by the jury, from the date of the completion of his services and demand for payment. See, also, Jolly v. Bryan, 86 N.C. 457, 458; Perry v. Norton, 182 N.C. 585, 109 S.E. 641 and cases cited; Security Nat'l Bank v. Travelers Ins. Co., 209 N.C. 17, 182 S.E. 702.

The defendant makes the contention that the whole claim of the receiver is barred by the limitations set out in § 60 of the Illinois Insurance Code of 1937, Ill.Rev. Stat.1941, c. 73, § 672. This section provides that when the Director of Insurance finds that the assets of an insurance company are less than its liabilities and the minimum surplus required by law, he shall order the Board of Directors of the company to levy an assessment against the members or policyholders for the purpose of supplying the deficiency, if the contracts contain a provision for a contingent liability; and then follows the provision that "no member shall be liable for an assessment unless notified of the company's claim therefor within one year after the termination of the policy whether by expiration, cancellation or otherwise".

Since the Act of 1937 took effect on July 1 of that year and the assessment was not authorized by the Illinois court until March 19, 1940, it is said that collection of the assessment from the defendant is barred, even though the one year period is calculated, not from December 21, 1935 when defendant's policies expired, but prospectively from July 1, 1937; and that a holding to this effect would be in accordance with the rule laid down in Sohn v. Waterson, 84 U.S. 596, 17 Wall. 596, 21 L.Ed. 737, with respect to the effect of a statute of limitations upon rights of action in existence when it is passed. It is suggested that the statute should be applied in this way to the liquidation proceeding instituted in the Illinois court on January 11, 1937 and that the Act of 1937 did not offend the rule that a statute of limitations may affect existing rights only if a reasonable time is given for the commencement of an action before the bar takes effect. See Terry v. Anderson, 95 U.S. 628, 24 L.Ed. 365.

It is pointed out that while § 221 of the Insurance Code of Illinois of 1937, Ill.Rev. Stat.1941, c. 73, § 833, provided that every proceeding theretofore commenced under the Act of 1925 should be continued as if that Act had not been repealed, § 221 also provided that assessments against policyholders might be made in accordance with § 207 of the Illinois Code (section 819). This section, as we have seen, authorized the Director of Insurance in the liquidation of an insurance company under an order of court to levy an assessment against the policyholders, with leave of court, to the same extent as assessments might have been levied by the Board of Directors.

On the other hand the receiver contends that the one year limitation in § 60 of the statute applies only to going concerns and not to companies in course of liquidation proceedings under the supervision of the court, as was held under a similar statute in Beha v. Weinstock, 247 N.Y. 221, 160 N.E. 17 and In re Auto Mutual Indemnity Co., Sup., 14 N.Y.S.2d 601; cf. Van Schaick v. Stiering, 141 Misc. 235, 253 N.Y.S. 235; and that in any event, a one year limitation would be unreasonably short, and therefore unconstitutional, as applied to the solution of the complex problems which arise in the liquidation proceedings of insolvent mutual insurance companies. See Terry v. Anderson, supra; McGahey v. Commonwealth of Virginia, 135 U.S. 662, 10 S.Ct. 972, 34 L.Ed. 304.

These are interesting questions upon which, if it were necessary to decide them, we should speak with hesitancy since the Illinois courts do not seem to have passed upon them in respect to the statute in question; but they need not be decided in view of the holding of the Illinois court in People v. Central Mutual Ins. Co., supra, that in the liquidation proceeding the assessment was laid under the Act of 1925 and not under the Act of 1937. The court said, 39 N.E.2d 406: "The ultimate question is whether the court had the power to direct and approve the levy by the receiver under the Liquidation Act of 1925". The court answered this question in the affirmative; and it was justified in so doing because, as we have seen, the Illinois Insurance Code of 1937 expressly provided that proceedings theretofore commenced under the Act of 1925 should be continued as if that Act had not been repealed. In short, such proceedings were to be continued as if the Act of July 1, 1937 had not been passed and the limitation proceeding therein had not been enacted. The permissive right conferred by the Act of 1937 to make assessments under its provisions in any pending liquidation proceeding was not exercised by the receiver or the court.

It is worth while to note that although the validity of the assessment under the Act of 1925 was vigorously attacked by the Insurance Company in the Illinois proceeding, no one seems to have considered that the limitation provision of the Act of 1937 furnished good ground for the assault. Indeed it appears that it was not so considered by the Court; otherwise the order of March 19, 1940 could not have been issued, since it authorized an assessment against "all individuals and corporations who at any time from January 31, 1935 to June 11, 1937, both inclusive, were holders of a policy or policies of insurance issued by said Central Mutual Insurance Company". If the bar of the statute fell on July 1, 1938, one year after the effective date of the statute, no assessment whatsoever would have been possible, because none of the policies issued by the company survived the adjudication of insolvency that was made on January 11, 1937.

█ We are also in accord with the finding of the District Judge that there was no fraud in the inception of the contract of insurance which invalidated it. The charge of fraud is based upon a promise made by the president of the Insurance Company at the time the purchase of the first policy in suit was made and the amount of the premium was fixed, that he would furnish a policy of Lloyd's of London to insure the defendant against an assessment. The principle is invoked that fraud may be predicated not only upon a misrepresentation of existing fact, but also upon a promise made with no intention to perform. Palmetto Bank & Trust Co. v. Grimsley, 134 S.C. 493, 133 S.E. 437, 51 A.L.R. 42; Williams v. Williams, 220 N.C. 806, 18 S.E.2d 364.

█ The District Judge found that there was no proof whatsoever to show that the promise had been made with intent to deceive and without intention to perform, since the president of the company intended to carry it into effect but later changed his mind in the belief that the Insurance Company was empowered to issue non-assessable policies. Moreover, the evidence is clear and strong that notwithstanding the failure of the Insurance Company to .furnish indemnity from Lloyd's, the defendant did not repudiate the policy, which did not incorporate the promise, but elected to accept the policy, paid the monthly premiums thereon and filed it in eight states in order to qualify to do business therein. In addition, the defendant filed a claim with the receiver for losses insured under the policy and received a dividend thereon. Having made its election, the defendant cannot now repudiate its obligations under the policies but is relegated to such counterclaim against the receiver for breach of the oral promise, as the law may recognize. It is not denied that such a counterclaim, even if it be sustained, would not give rise to a set-off against the claim asserted by the receiver in this suit. See 29 Am.Jur., Insurance, § 415.

█ Equally without merit is defendant's contention that the first policy in suit is not enforceable because it was delivered to the defendant in New York in December, 1934 when the Insurance Company was not qualified to do business either in New York or North Carolina. It is asserted that a contract of insurance made in violation of local law is unenforceable, and that the subsequent qualification of the Insurance Company to do business in North Carolina did not cure the defect in this instance. See Bothwell v. Buckee-Mears Co., 275 U.S. 274, 48 S.Ct. 124, 72 L.Ed. 277; Perkins Mfg. Co. v. Clinton Construction Co., 211 Cal. 228, 295 P. 1, 75 A.L.R. 439, 447, 465; Commonwealth Mut. Fire Ins. Co. v. Edwards, 124 N.C. 116, 32 S.E. 404. The first policy in suit was intended to cover operations in the states lying between South Carolina and New York, inclusive, and there is nothing to show that it was not lawfully issued and in effect under the laws of these states, other than North Carolina, from the time of its issuance. As to North Carolina the District Judge found that the first policy in suit was delivered to the Utilities Commission of North Carolina in substitution for a prior policy on January 9, 1935 and that in accordance with the intention of the parties it became effective in the state on that date. Prior thereto, on January 8, 1935 the Insurance Company qualified and received permission to do business in North Carolina. We have already pointed out that subsequent to the issuance of the policy and compliance by the company with the statute requirements of North Carolina, the defendant paid the premiums on the policy and made use of it as a basis for doing business in the state.

█ The defendant's contention that the receiver is estopped to prosecute the suit is too unsubstantial to justify extended

discussion. It is said that as the receiver was appointed by the Director of Insurance under the Illinois Liquidation Act of July 1, 1925, he is the agent of the Director and is therefore estopped from recovering the assessment from the policyholders, because the Director represented in the course of his official duties that the company was solvent from January 31, 1935 to January 11, 1937, the period of insolvency upon which the assessment was based. There is no proof that the defendant relied on the Director's statements when prior thereto, on January 9, 1935, the defendant accepted the first policy and put it into use in North Carolina. Moreover, it is obvious that in this case the receiver is acting on behalf of the creditors to secure them the protection afforded by the Illinois statutes and that the statements of the Director, made in the discharge of a governmental function, furnish no basis for the application of the principle of estoppel. See 31 C.J.S., Estoppel, § 142.

The decree of the District Court will be modified and the case remanded for further proceedings in accordance with this opinion.

Modified and remanded for further proceedings.