KEEHN v. PARRISH DRAY LINE et al.

C. A. No. 1076.

District Court, E. D. South Carolina, Columbia Division.

Jan. 26, 1944.

William L. Cain (of Thomas, Cain & Black), of Columbia, S. C., for plaintiff.

John D. Lee, of Sumter, S. C., for defendant Parrish Dray Line, Inc.

H. C. Bowman, of Charleston, S. C., for defendants L. W. Strock & J. A. Smith, partners.

Robert McC. Figg, Jr., of Charleston, S. C., for defendant George A. Rheman, Inc.

Frank A. Graham, of Columbia, S. C., for defendant New South Express Lines, Inc.

TIMMERMAN, District Judge.

The plaintiff, a citizen and resident of Illinois, as the statutory receiver of the Central Mutual Insurance Company of Chicago, brings this action to recover from the defendants, who are citizens of South Carolina, residing in this District, the amount of certain assessments alleged to be due by them as the holders of policies of motor vehicle liability insurance issued by the company.

The defendants have filed separate but identical motions to dismiss the complaint for failure to state a claim upon which relief can be granted. At the hearing, it was agreed by counsel for all of the parties that Policy No. X-91206, issued to the defendant George A. Rheman Co., Inc., should be filed in the record of the cause as a specimen of the policies involved in the action, and that it should be considered by the Court as a part of the complaint for the purposes of the motions.

The complaint alleges the incorporation of the company in 1926 under the laws of Illinois providing for the organization and

management of mutual insurance corporations other than life, Laws 1915, p. 485; its admission to do business in South Carolina in 1934 pursuant to the laws of the State of South Carolina thereunto appertaining; the issuance to each of the defendants of a number of policies of motor vehicle liability insurance within the period from January 31, 1935, to and including January 11, 1937; the institution in the Circuit Court of Cook County, Illinois, on January 11, 1937, of proceedings for the liquidation of the company by reason of insolvency, and the appointment of a statutory receiver who is vested by operation of law with the title to all the property, contracts, rights of action, claims and demands of the company; the levy in that proceeding of an assessment against all persons, firms or corporations, including the defendants in this action, who at any time from January 31, 1935, to January 11, 1937, were the holders of policies of insurance executed and delivered by the company, the assessment being in the "amount of one hundred per centum (100%) of (that is, one times)" the cash premium expressed or named in the respective policies; and written demands upon the defendants for the payment of such assessments, and their failure or refusal to pay the same.

The asserted liability of the defendants for such assessments is based upon the following allegations of the complaint:

"3. That under the laws of the State of Illinois, and especially Sections 13, 14 and 15 of the aforesaid referred to Act, all policyholders of the company are members of the corporation and subject to a contingent liability for an assessment of not less than one nor more than ten times the cash premium expressed in the policy; that in accordance with the provisions of said Statutes, the Central Mutual Insurance Company of Chicago in all of the policies issued to and accepted by the defendants herein specifically provided as follows:

" 'The contingent liability of the assured hereunder is limited to one time the premium named herein and no more. The assured is hereby given and accepts notice that by virtue of this policy he is a member of the Central Mutual Insurance Company of Chicago.' "

In support of their motion to dismiss, the defendants contend, since they were not personally served with process in the Illinois action, that the judgment of that court in reference to the assessments is conclusive only of the necessity for and the amount of the assessments upon the policyholders who are liable thereto; that the South Carolina statutes and decisions, rather than those of Illinois, must be followed in determining the construction of the policies and the liability of the defendants thereon; that it does not appear that the defendants contracted or agreed to pay any amount on the policies issued to them except the cash premiums stated therein, or that the defendants contracted or agreed to be liable for any assessments upon said policies; and that the language of the policies, when interpreted in the light of the applicable principles of construction, precludes an assessment against them on the policies and limits their liability thereon to the cash premium expressed therein.

The policy filed in the record contains no reference to laws of the State of Illinois or to any by-laws of the company. It contains a schedule of the several insurance coverages which may be extended thereunder, and the coverages actually extended are indicated by the respective premiums therefor which are inserted in writing or typewriting in a column for the purpose. At the foot of such column is a space opposite the printed words "Total Premium", in which space the total amount of the several premiums entered above is written or typewritten. There is no reference to, or any indication of, any further premium or liability of the assured as a condition of the coverage extended.

The policy contains an insuring clause by the terms of which the company, "In consideration of the Premium Herein Mentioned Does Insure" the assured in respect of the coverages designated by a specific premium in the schedule mentioned above.

The policy also contains a number of printed paragraphs under the heading "Definition of Perils" and a number of printed paragraphs under the heading "General Conditions". The provision of the policy quoted in the allegations of the complaint above set forth appears as the last of the "General Conditions" of the policy.

Among the "General Conditions" is a paragraph providing in substance, that the policy shall be of force in any state or province having a Motor Vehicle Finan-

cial Responsibility Law, but that the assured shall reimburse the company for any payment made by it which the company would not have been obligated to pay without such provisions. There is also a paragraph providing, in substance, that any provisions of the policy in conflict with the statutes of the State wherein it is issued are declared to be amended to conform to such statutes, but that the assured shall reimburse the company for any loss, costs or expenses paid or incurred by it which it would not otherwise be obliged to pay.

■ The complaint does not allege that the defendants were personally served in the Illinois action, and hence the adjudication of the Illinois court is conclusive, in any event, only as to the necessity and amount of the assessment levied therein. Miller v. Barnwell Bros., 4 Cir., 137 F.2d 257; Pink v. Aaron, 196 S.C. 423, 13 S. E.2d 489.

The plaintiff predicates his right to recover upon the contention that by the provisions of the policies the defendants became members of the company and liable to assessments under the Illinois statutes as an incident of membership, and also that the policies expressly provide for liability to an assessment thereon.

The company was admitted to do business in South Carolina under legislation enacted in 1920, 31 S.C.Statutes at Large 910, now appearing as Sections 8088–8110 of the 1942 Code of Laws of South Carolina.

Such legislation provides for the formation of mutual insurance companies other than life, and also for the admission of such companies organized without the state upon the approval of the Insurance Commissioner and their compliance with the requirements set forth therein. When admitted, a foreign mutual insurance company may "transact the kinds of insurance authorized by its charter or articles to the extent and with the powers and privileges specified in" the legislation, subject, among other things, to the provisions of Section 8104, which provides, in part: "Every mutual insurance company, whether organized within or without this State, shall be subject to all the provisions of law relating to policy forms, the supervision of rates, prohibition of discrimination and rebates, annual reports, reserves, taxes and fees, and shall make its annual report in such form and submit to such examinations and furnish such information as may be required by the insurance commissioner."

The policy filed in the record shows upon its face that it was issued and delivered in South Carolina by a South Carolina agent of the company. The complaint does not allege that any of the policies sued on were issued upon a written application or that they were applied for, issued and delivered in any other state, and it was not so contended by counsel for the plaintiff at the hearing. It was taken as a fact that they were all applied for, issued and delivered in South Carolina.

■ Under these circumstances, the interpretation and legal effect of the policies are to be determined in the light of the applicable South Carolina statutes and decisions. Pink v. A. A. A. Highway Express, 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152, 137 A.L.R. 957; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462; Pink v. A. A. A. Highway Express, 191 Ga. 502, 13 S.E.2d 337, 137 A.L.R. 934; Pink v. Georgia Stages, Inc., D.C., 35 F.Supp. 437.

■ It is well settled in South Carolina that the validity and interpretation of a contract of insurance is governed by the laws and decisions of the courts of the state in which the application is made and the policy delivered (Cantey v. Philadelphia Life Ins. Co., 166 S.C. 181, 164 S. E. 609), and that all the laws of the state relating to the subject matter of such a contract made in South Carolina are parts of the contract. Massachusetts Bonding & Ins. Co. v. Law, 149 S.C. 402, 147 S.E. 444. By the express provisions of the legislation under which the company applied for and received authority to do business in the State, it was made subject to all the provisions of law relating to policy forms, etc. (S.C.Code of Laws 1942, Section 8104).

Prior to the enactment in 1920 of the legislation here applicable, the South Carolina courts had held that a mutual insurance company, in the absence of a statute to the contrary, might issue a policy for a cash premium which was not subject to assessment. Wetmore, Receiver, v. McElroy, 1912, 96 S.C. 182, 80 S.E. 266, 267, Ann.Cas.1916B, 79.

In that case, the Court quoted with approval the following from Union Ins. Co.

v. Hoge, 21 How. 35, 16 L.Ed. 61: "It is argued, however, that the company in question is a mutual insurance company, as declared by the act; that, according to this system, the insured must be a member of it; and that a person insured upon a cash premium, without any further liability, cannot be a member. This argument is not well founded, either upon principle or authority. Admitting that the insured must be a member of the company, he is made so by the payment of a cash premium. The theory of a mutual insurance company is that the premiums paid by each member for the insurance of his property constitute a common fund, devoted to the payment of any losses that may occur. Now, the cash premium may as well represent the insured in the common fund, as the premium note; and this class of companies has been so long engaged in the business of insurance, it may well be that they can determine, with sufficient certainty for all practical purposes, the just difference in the rates of premium between cash and notes. These mutual companies, possessing the authority contained in the eighth section of this charter, namely, to take cash premiums or premium notes, are, at the present day, in operation in several of the states, and it has never been supposed that the mutual principle has been thereby abrogated."

The South Carolina Act of 1920 included a section, now Section 8097 of the Code of 1942, which reads: "The maximum premium payable by any member shall be expressed in the policy or in the application for the insurance. Such maximum premium may be a cash premium and an additional contingent premium not less than the cash premium, or may be solely a cash premium with no contingent premium or liability to assessment in any event. No policy shall be issued for a cash premium without an additional contingent premium unless the company has a surplus which is not less in amount than the capital stock required of domestic stock insurance companies transacting the same kind of insurance."

█ It is to be noted that this section of the Act specifically provides that "The maximum premium * * * *shall be expressed in the policy* or in the application for the insurance" (here no formal written application was filed). Furthermore, the Act prescribes how the "maximum premium" may be "expressed in the policy." First, as "a cash premium and an additional contingent premium not less than the cash premium"; and, second, as "solely a cash premium with no contingent premium or liability to assessment in any event." While the insurer was given the option of selecting one or the other of the maximum premium forms prescribed, the Act required the form selected to be "expressed in the policy." Clearly the legislation was passed for the benefit of the policyholder, so that the insured would be protected from duplicity and ambiguity in a policy. Hence a member's liability to the payment of an additional contingent premium or an assessment will depend on whether such liability is clearly expressed in the policy or in the application therefor.

The policy filed in the record as a specimen, and considered as a part of the complaint, states that the "Total Premium" is $862.00. Nowhere in the policy is found a statement that an additional contingent premium is, or may be, due by the assured. It does not contain any agreement by the assured to pay more premium than the cash premium stated in it. The complaint does not allege that the policies sued on contained such a statement or agreement.

█ The plaintiff contends, however, that the policies were issued for "a cash premium and an additional contingent premium not less than the cash premium" because of the inclusion of the following provision printed as a part of the "General Conditions": "The contingent liability of the assured hereunder is limited to one time the premium named herein and no more."

This provision is in form neither the statement of, nor an agreement to pay, an additional contingent premium. It is not printed in the policy in connection with, or in relation to, the statement of the premium. On the contrary, it appears on the fourth page of the policy as the last of the "General Conditions", while the "Total Premium" is stated on the first page of the policy in connection with the coverage extended and the insuring clause. It does not give any indication to the policyholder that it deals with the subject of the premium for the policy or that it is intended to provide for any premium payment by the assured additional to the amount expressly stated as the "Total Premium" on the first page of the policy. It is written as a limitation of contingent liability "here-

under", and would seem to contemplate some liability created in the policy itself, and not to a liability thought to exist dehors the policy. Reference has been made above to at least two items of contingent liability of the assured written into the policy under the heading of "General Conditions" to which the quoted provision could as well, or perhaps better, refer. Therein are requirements that the assured will "reimburse the company" for certain enumerated payments or expenses which it contingently may incur on behalf of the insured.

As written, the provision with reference to contingent liability does not express to the assured his asserted obligation to be liable for a contingent premium in addition to the cash premium stated by the policy to be the "Total Premium", and it is not an agreement by the assured to pay more than the cash premium stated. The policy was written by the company and the most that can be said of its language, read in connection with the South Carolina statute, is that it is provocative of doubt, which, under the South Carolina decisions, must be resolved against the company and the plaintiff who sued in the company's right. Tuten v. Bowden, 173 S.C. 256, 175 S.E. 510; Murray v. Texas Co., 172 S.C. 399, 174 S.E. 231; Charles v. West, 155 S.C. 488, 152 S.E. 644.

The provision in the policy with reference to membership in the company does not serve to subject the holder of a policy applied for and delivered in South Carolina to the assessment provided by the Illinois statutes, in view of the failure of the company to express such liability in the policy as required by the South Carolina statute. If membership alone were held to accomplish this result, the effect would be to nullify the requirement of the South Carolina statute that the "maximum premium" of any member shall be expressed in the policy. The State of South Carolina has "a legitimate interest in determining whether its residents have assented to membership obligations sought to be imposed on them by extrastate law to which they are not otherwise subject." Pink v. A. A. A. Highway Express, 314 U.S. 201, 62 S.Ct. 241, 247, 86 L.Ed. 152, 137 A.L.R. 957. The statute prescribes the form of the required assent.

The provision in Section 8097 that no policy shall be issued for a cash premium without an additional contingent premium unless the company has a surplus not less in amount than the capital stock required of domestic stock insurance companies transacting the same kind of business deals with the issuance of policies, a function of the company, and regulates the conduct of the company's business. Its violation would subject the company to the penalties prescribed in Section 8108, but that portion of the section does not modify or create an exception to the requirement that the maximum premium payable by a member shall be expressed in the policy or in the application. To hold otherwise would be to make the premium liability of a member on a policy written solely for a cash premium depend upon the changing status of the company's surplus rather than upon the language of the policy. Such obviously was not the legislative intent in the enactment of the section.

The policies in question, when issued in Illinois and construed in the light of the statutes of that State, may be sufficient to obligate policyholders to the payment of assessments levied upon them in accordance with the Illinois statutes. The policies likely were prepared for use in Illinois, where liability for assessment exists, according to the complaint, independently of the policy provisions, and were not adapted to use under the South Carolina statutes, where more than a limitation provision is necessary by statute to create the liability. To a citizen of South Carolina, who is not charged with knowledge of the Illinois laws, the policies do not give the notice of liability to an additional contingent premium which the State Act requires, and any South Carolina citizen could fairly and reasonably conclude that when he had paid his "Total Premium" stated in the policy he had discharged his full premium obligation to the company. Construed under the provisions of Section 8097, the policies fall within the kind authorized to be issued solely for a cash premium with no contingent premium or liability to assessment in any event.

The complaint does not state a claim upon which relief can be granted, and the motions of the defendants must be, and are hereby, granted.