WHEELER, RECEIVER *v.* KIGHT

No. 40753 April 28, 1958 102 So. 2d 374

*James Stone & Sons,* Oxford, for appellant.

*Fant & Bush,* Holly Springs, for appellee.

McGEHEE, C. J.

On August 12, 1954, the appellant J. D. Wheeler, Statutory Receiver for the Allied Underwriters, an unincorporated "reciprocal insurance exchange" domiciled in Dallas, Texas, and which receiver was also the liquidator for the Board of Insurance Commissioners of the State of Texas, filed this suit in the Circuit Court of Marshall County, Mississippi, against the appellee K. K. Kight, who was formerly doing business as Malvern-Hot Springs Transportation Company for the sum of $1,141.65, representing an assessment of an amount equal to the insurance premium which had been earned and paid under certain policies of liability insurance, for $10,-000 for each person, $20,000 for each accident, and property damage liability of $5,000 for each accident on two 1935 International passenger busses, the said insurance policies having been issued by a general agent, Willis

V. Lewis, at Little Rock, Arkansas, on behalf of the Allied Underwriters.

The suit was predicated upon a judgment rendered for the said amount against the appellee in the 126th District Court of Travis County, Texas, on February 16, 1949, in a class suit filed by the receiver against certain policyholders of Allied Underwriters in the State of Texas who had signed subscribers agreements and had become members of the Allied Underwriters. The suit also sought to obtain a judgment, and which was accordingly rendered, against a number of nonresidents of the State of Texas, including the appellee K. K. Kight of Malvern, Arkansas, and which said nonresidents were not sued by name in the class suit in Travis County, Texas, and against whom no process was had except by mailing the same to them at their respective places of residence.

There was attached to the declaration as an exhibit thereto a subscribers agreement to which the name of the appellee had been subscribed by someone without his knowledge or consent, according to his testimony. He testified that the signature was not his own; that he did not write his name that way, and to substantiate his contention he produced his driver's license containing his genuine signature and wrote his name on a sheet of paper six times for the inspection of the jury. No one disputed his testimony that he did not sign the subscribers agreement. The declaration alleged that "he, and all other subscribers of said exchange, under the terms of their applications and agreements, reciprocally engaged themselves to indemnify each other and one another against losses and hazards described in the policy or policies issued to him and to them."

It appears that a specimen policy had been approved by the Board of Insurance Commissioners of the State of Texas for use by Allied Underwriters in that state. That specimen policy did contain the provision that:

"Subscribers hereat (Allied Underwriters) are individuals, partnerships and corporations which have each executed an agreement hereby made a part hereof, which vests in F. M. Moulton and E. F. Dardnne herein called 'Attorney', power to issue this policy for them, which is issued to the Subscriber named herein in exchange for, and in consideration of, indemnity extended by him to other subscribers." The specimen policy then contained a provision limiting the liability of those signing the subscribers agreement and becoming members in Allied Underwriters to the additional amount of the premium earned and paid on their policies, and which additional liability was to secure the payment of the claims of all policyholders in the event of the insolvency of the said reciprocal insurance exchange. It is undisputed that the Allied Underwriters became insolvent on December 31, 1940, and was still insolvent on August 17, 1943, at which later date the affairs thereof were taken over by the receiver.

The judgment rendered against the appellee by the 126th District Court of Travis County, Texas, in assessing him with the sum herein sued for was on February 16, 1949. It is contended by the appellant that this case is controlled by the statutes and decisions of the courts of Texas, where the Allied Underwriters was incorporated and domiciled, whereas it is contended by the appellee that since he applied for insurance on his three busses with a local agent, K. L. Harris of Malvern, Arkansas, and that the policies were issued by Willis V. Lewis, the General State Agent in Arkansas of the Allied Underwriters, the premiums paid in Arkansas where the appellee resided, that the case is governed by the laws of the State of Arkansas, and that this suit became barred five years after February 16, 1949, before the suit was filed on August 12, 1954. But in view of the conclusions that we have reached on other grounds, we pretermit any decision as to whether the five-year statute of

limitation of the State of Arkansas or that of the forum, applies.

We predicate our decision in this case upon the sole question of whether or not the Full Faith and Credit Clause of the Federal Constitution renders the judgment of the 126th District Court of Travis County, Texas, binding upon the appellee in the instant case. That judgment fully adjudicated that the appellee had signed a subscribers agreement and had become a member of the Allied Underwriters, and was subject to the assessment. The determination of that question depends upon whether or not that court had jurisdiction both of the subject matter and territorial jurisdiction of the appellee who then resided in Marshall County, Mississippi.

Although different on its factual situation, this Court held on November 4, 1957, in the case of Hutchins v. Moore, 231 Miss. 772, 97 So. 2d 748, wherein Hutchins, the natural father of a child whose mother was dead, and the domicile of which child was in the State of Texas with its father, under the decisions of the Courts of the State of Texas, had himself appointed guardian of the person and estate of the child, and had the permanent custody of the child awarded to him, upon process mailed from the Texas Court to the Sheriff of Coahoma County, Mississippi, and served by the said sheriff upon Mr. and Mrs. Moore, the maternal grandparents of the child, and with whom the child was living. The father, Hutchins, invoked the decision of the Texas Court awarding to him the permanent custody of the child, and relied upon the Full Faith and Credit Clause of the Constitution of the United States, in a suit over the custody of the child in which Hutchins and the Moores were parties, complainant and defendants. In that case this Court said: ''It is true that under the Texas court decisions the domicile of this child reverted to its father at the death of its mother on December 24, 1955, but under this technical concept of the legal domicile of the child

without regard to where it has actually resided most of its entire life, this Court should not give full faith and credit to the decrees rendered by the Texas court on September 10, 1956, for the reason that the court there did not have territorial jurisdiction over the maternal grandparents at Clarksdale, Mississippi, who entered no appearance in the Texas court and were not served with process except by a service on them of a summons which had been mailed from the Texas court to the sheriff of Coahoma County, and at a time when both the child and its maternal grandparents were physically present in Clarksdale, Mississippi. This was true both when the Texas proceedings were filed, and also when the decrees of September 10, 1956, were rendered by the Texas court.''

Therein we cited the case of Baskin v. Montedonico, 6 Cir., 115 F. 2d 837, wherein it was said: ''Where jurisdiction of a foreign court or that of a state is brought into question in a suit in courts of another state or sovereignty, the law of the forum is controlling upon the question of jurisdiction of the court rendering the judgment.''

Finally, we said: ''We deem it to be well settled in this state that in order for our courts to be required to give full faith and credit to the judgments, decrees, and decisions of the court of another state, the court of the foreign state must have had jurisdiction both of the subject matter and territorial jurisdiction of the parties. The law of the forum where this case was tried at Clarksdale would prevent any judgment of a foreign state to be binding upon parties residing in this state, where such foreign judgment was rendered merely on constructive service of process, and where there had been no answer or other pleading filed by the resident of this state and where he has not otherwise entered an appearance in the court of the foreign state.''

Then too, the contentions of the appellee were fully discovered and decided in his favor in the case of Pink

v. A. A. A. Highway Express, Inc., et al., 191 Ga. 502, 13 S. E. 2d 337, 137 A. L. R. 934, 314 U. S. 201, 86 L. Ed. 152, 62 S. Ct. 241, 137 A. L. R. 957 (Rehearing denied 314 U. S. 716, 86 L. Ed. 570, 62 S. Ct. 477.) It is still open to any who were not served with process in the class suit to show that they never became members.

 While in the instant case the 126th District Court of Travis County, Texas, had jurisdiction of the subject matter in the class suit in which the assessment against the appellee was made, it did not have territorial jurisdiction of the person of the appellee who then lived in Marshall County, Mississippi, and who was not served with such process as to make binding a judgment against the appellee. When he was sued in Marshall County, Mississippi, the court did not err in declining to give Full Faith and Credit to the judgment rendered in the class suit aforesaid, and the jury was amply warranted under the testimony in concluding on the merits that the appellee was not subject to the assessment in the class suit on February 16, 1949, wherein the court did not have the territorial jurisdiction of him as required by the decisions of the Supreme Court of Mississippi.

 Moreover, it appears that the policies of insurance issued by the General Agent in Arkansas of the Allied Underwriters, at Little Rock, Arkansas, did not provide for an assessment of additional liability against the appellee, since the two copies of that policy introduced by the receiver as plaintiff disclosed that the provisions hereinbefore quoted from the specimen policy approved for use in the State of Texas were omitted therefrom. The appellee testified in the trial of this case in Marshall County that he had never seen, and had no knowledge of the reciprocal agreement in the specimen policy approved for use in the State of Texas prior to the trial of the instant case. Then too, the two copies of the policies allegedly issued and delivered to the ap-

pellee in Arkansas, speaking for themselves, do not provide for the assessment of additional liability herein sued for.

It follows from the foregoing views that the judgment of the Circuit Court of Marshall County, Mississippi, based upon the verdict of the jury, denying liability of the appellee for this additional liability, as sued for herein, should be affirmed.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.